## SIMON *v.* ROBINSON

[No. 5, September Term, 1959.]

*Decided October 23, 1959.*

*Motion for rehearing filed November 23, 1959, denied December 17, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Fred I. Simon,* with whom was *Jules Fink* on the brief, for appellant.

No brief and no appearance for appellee.

HORNEY, J., delivered the opinion of the Court.

Elmer R. Robinson (Robinson or plaintiff) sued Fred I. Simon (Simon or defendant) for libel in the Circuit Court for Montgomery County. After several preliminary skirmishes on the extraordinary number of pleadings, the case was removed to Prince George's County for trial and resulted in a jury verdict of $5,000. The trial court denied a motion for judgment n.o.v., or in the alternative for a new trial, and entered a judgment absolute. This appeal is from that judgment and the order dismissing the defendant's counterclaim.

Simon, who is an attorney-at-law and a member of the Bars of Illinois, the District of Columbia and Maryland, is also engaged in the real estate and insurance business. In 1954, having contracted to build a home for a veteran on land owned by the defendant, Simon employed a contractor to con-

struct the house. When that contractor failed to perform promptly, Simon entered into another contract with Robinson—who agreed to proceed without delay—and paid Robinson a deposit. In addition, there was a collateral agreement concerning a fee for Simon should he secure Veterans Administration approval for a house which one of Robinson's customers was building. Simon also claimed that there was an agreement between the contracting parties that Simon should have an exclusive right to sell houses built and owned jointly by Robinson and Robert L. Werth (Werth), who was a partner of Robinson. On the contrary Robinson denied there had been an exclusive agency.

A dispute arose when the construction did not progress as rapidly as Simon had indicated to Robinson was essential to forestall suit by the impatient veteran. Simon charged Robinson with acting in bad faith when the latter claimed that Simon had furnished him with an incorrect site-plan or building plan and specifications, which Robinson asserted had prevented the construction of the house going forward as agreed. As a result of the charges and countercharges, numerous letters were sent by Simon to Robinson and others, four of which became the subject matter of this action. However, on this appeal, we are concerned with only one of them. The trial court granted the motion of the defendant for a directed verdict as to the first and fourth counts in the amended declaration concerning two of the letters and the jury, under instructions by the court, found for the defendant on the second count which concerned another of the letters. It is the fourth letter, dated September 8, 1955, sued on in the third count, with which we are presently concerned. In that letter Simon wrote Werth as follows:

> "On September 6, 1955, Notice and Demand was served upon your partner Mr. Elmer R. Robinson for the immediate return to the undersigned of the deposit of $420.29, which he induced me to place with him under date of July 7, 1955, which said *funds were fraudulently diverted and converted for his own use* from the above building project to one

in which it now appears you are a partner." (Emphasis added.)

Simon testified that Robinson had told him of the partnership arrangement between the latter and Werth. From this and what Simon saw with regard to Robinson's building operations, it is evident—from the contents of the letter of September 8, 1955—that he thought that Robinson was also a partner of Werth in other transactions than the building of houses on their jointly owned property. Simon asserts that by reason of this relationship and a claim that Werth asked him to write the letter in question, he was entitled to a privilege which would negate malice.

The libel suit, which is the subject of this appeal, was filed on November 22, 1955. Six days later—on November 28, 1955—Simon brought an action in the Municipal Court for the District of Columbia against Robinson for fraud and deceit on the alleged conversion of the contract deposit and to recover on the contract between them. Counterclaims were filed in both suits. The case last filed was tried first, its determination being based on the contract between the parties and not on any claims of libel. It was decided against Simon on his claims against Robinson, and against Robinson on his counterclaim against Simon.

On March 14, 1957, the defendant filed an incomprehensible counterclaim to the amended declaration. The plaintiff demurred to the counterclaim, but the demurrer was subsequently overruled. At the same time the defendant's motion for additional time to complete his counterclaim was also overruled. Another motion "for leave to file counterclaim"—not included in the record extract—was apparently never passed upon. But on August 27, 1958, after the case had been removed to Prince George's County, the defendant renewed his motion "for leave to file counterclaim." On this occasion, the trial court declared the pleading was in effect a motion to amend, and declined to exercise its power to permit an amendment. Finally, at the close of the case on October 9, 1958, the plaintiff moved "to dismiss counter suit," and the motion was granted.

On this appeal Simon contends (i) that it was error to rule that the letter of September 8, 1955, was [a] libelous *per se* instead of ruling that it was [b] a privileged communication or [c] that the libelous character of the letter was *res judicata* because of the District of Columbia proceedings; (ii) that it was error to dismiss the defendant's counterclaim; and (iii) that the motion for judgment n.o.v. should have been granted. Robinson did not file a brief.

### (i). Rulings with Respect to Letter.

In considering whether these rulings are properly before us, there is reason at first blush to doubt it, but when the factual and procedural debris which cluttered the involved record extract and brief for the appellant-defendant is cleared away, the tripartite issue raised by this first contention is relatively clear.

[a]. Was the letter libelous *per se?* While the defendant did not directly except at the trial to the ruling that the letter was libelous *per se*, it appears the question had been raised and preserved earlier. His rather oblique reference to the question in chambers, which was aimed at having the court declare that his defense of privilege had been established and that the plaintiff had failed to rebut the presumption by showing malice, was certainly not sufficient to raise the question on appeal. However, the record shows that the defendant had properly demurred to the amended declaration in the accepted manner before the adoption of the new Maryland Rules, so that when the demurrer was overruled by the Montgomery County Court (Reeves, J.), the court in effect was thereby ruling as a matter of law that the letter was libelous *per se*. 1 Poe, *Pleading and Practice* (Tiffany's ed. 1925), § 178, and cases therein cited. Thus, the question is properly reviewable. Even though the defendant did not, either in his brief or in his oral argument, clearly indicate that he was appealing the adverse ruling on the demurrer, yet it may be concluded that it was this point to which he was directing his oral remarks.

It follows that the next question is whether the demurrer was properly overruled. The term "libelous *per se*" was defined by this Court in *Flaks v. Clark*, 143 Md. 377, 381,

122 A. 383 (1923), as "[a] false and malicious printed or written publication which imputes conduct, or qualities tending to disparage, or degrade the plaintiff, or expose him to contempt, ridicule, or public hatred, or prejudice his private character, or credit * * *." See also *Pollitt v. Brush-Moore, Etc., Inc.,* 214 Md. 570, 136 A. 2d 573 (1957); *Thompson v. Upton,* 218 Md. 433, 146 A. 2d 880 (1958). There is no doubt that the words used by Simon in his letter to Werth— the "funds were fraudulently diverted and converted [by Robinson] for his own use"—are within the meaning of the quoted definition. The lower court did not err, therefore, when it overruled the demurrer.

[b] Was the letter a privileged communication? Simon's objection with respect to this question was seasonably raised and preserved when he renewed his motion for a directed verdict at the close of all the evidence on the ground that the court should rule as a matter of law that the letter was privileged.

After it had been called to the court's attention that there was what *purported* to be a plea of justification, the court quite properly allowed the defendant to show justification in that the letter might be privileged, and thereby rebut, if he could, the presumption of constructive malice. But, when it was made, the motion for a directed verdict, based on the theory that he had as a matter of law shown privilege, was denied. We think this ruling was correct.

Simon's contention appears to be that he was entitled to a privilege because he believed there was some connection between Werth and the house Robinson was to build for Simon, because Werth (as Simon claims) asked him to write the letter now in question and because Simon believed there was some obligation resting upon him to give to Werth the information therein contained. The legal basis for Simon's claim is not wholly clear to us. If it was his intention to assert a common interest with or duty to Werth [the existence of which, in the absence of a dispute as to the facts [1]] is a question of law, he (Simon) failed to refer us to any authority

---

1. See Prosser, *Law of Torts* (2d ed. 1955), § 95.

directly in point to support this claim, and we have found none. Indeed the cases concerning interest or duty invariably state or hold that a libelous communication is privileged only when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto. See, for example, *Maurice v. Worden,* 54 Md. 233 (1880) [occasion for superintendent of Naval Academy to make a libelous comment to his superior officer on the resignation of a professor from the teaching staff was qualifiedly privileged] ; *Fresh v. Cutter,* 73 Md. 87, 20 A. 774 (1890) [oral communication from former employer to prospective employer as to character of employee was privileged even though such communication to another would not have been] ; *Bavington v. Robinson,* 127 Md. 46, 95 A. 1067 (1915) [charge by vendee that vendor had sold to another certain corn in which parties had a mutual interest under bill of sale to secure a loan was privileged] ; and *Jump v. Barnes,* 139 Md. 101, 114 A. 734 (1921) [letter from railroad agent to freight claims auditor of a connecting carrier stating that car of corn, claimed to have been damaged in transit, was rotten when loaded was qualifiedly privileged]. See also Restatement, *Torts,* § 595.

On the other hand, even though Simon failed to establish that the recipient had an interest in the subject of the libelous communication or that he was the proper person to receive it, the occasion was nevertheless privileged if Simon in good faith, without malice, reasonably believed that such was the case. His lack of belief in the truth of the defamatory charge, or his lack of reasonable grounds for so believing, although immaterial to the existence of a qualified privilege, was important as constituting an abuse of the occasion which would deprive him of the protection it would otherwise have afforded. Restatement, *Torts,* § 595, *supra,* comment (b). Thus, the question of Simon's reasonable belief in the existence of a qualified privilege was a question of fact for the jury to decide. That was done. The trial court submitted the question of privilege to the jury on instructions which presented Simon's theory, and no exception was taken to that part of the charge. If it was erroneous, we think it erred in

giving an instruction which was more favorable to Simon than that to which he was entitled. That, of course, would afford him no ground for reversal. Since the jury's verdict implicitly included a finding that Simon's belief was unreasonable, or non-existent, his lack of good faith merely served to destroy the privilege by showing actual malice.

[c] Was the libelous character of the letter res judicata? This question is also properly before this Court. When the defendant moved to amend his pleas by filing a plea of res judicata to the amended declaration, the Montgomery County Court (Anderson, J.) denied the motion.

Since, under Rule 320, leave to amend is discretionary, the real question is whether the court abused its discretion. The ruling was proper. As the lower court pointed out in its memorandum opinion this action is a suit for libel while the counterclaim to the action on which a final judgment was entered in the District of Columbia was for a breach of contract. On that question, the District of Columbia case was *res judicata* against Robinson, but there is nothing before us to show that the claim for libel either was or might have been adjudicated in that proceeding.

(ii). Dismissal of Counterclaim.

In the counterclaim filed March 14, 1957, in this action for libel—characterized below as a "very bob-tailed type of pleading"—Simon apparently intended to sue Robinson for breach of the building contract and perhaps for a fee under the collateral agreement for legal services rendered by Simon for another, but it is impossible to determine from the pleading the relief he sought. When on August 27, 1958, the defendant moved to "clarify previous inconsistent rulings" with respect to "an unjustified denial of the right to file a counterclaim"—which in effect was a motion to amend the original incomprehensible counterclaim—the court in ruling on the motion denied it. As to the first count—a claim for the fee referred to above—the court concluded that it could have been and should have been ascertained and litigated in the District of Columbia suit against Robinson for breach of contract. With respect to the second and third counts—which

assert that Robinson brought his libel suit in bad faith, and in a conspiracy with others, to maliciously injure the defendant in his professional capacity as an attorney-at-law, and that the bringing of this libel suit in fact libeled the defendant-counterclaimant, for which he claimed damages of $75,000—the court concluded they did not state a proper cause of action. Since, under Rule 320 d 1 (b), an amendment may not be made without leave of court, the discretion the court had to allow or refuse an amendment will not be reviewed in the absence of showing of abuse. See *Perlmutter v. Minskoff,* 196 Md. 99, 112, 75 A. 2d 129 (1950), and cases therein cited. In this case the trial court stated that it declined to exercise its right to grant leave to amend for the reasons referred to above. We do not find that the court abused its discretion in refusing to permit amendment. Likewise, the granting of the motion to dismiss the original counterclaim was appropriate since it did not state an ascertainable basis for relief.

### (iii). Refusal of Motion for Judgment N.O.V.

The court's refusal to grant the motion was proper. In considering such motion, the trial court is required to resolve all conflicts in the evidence in favor of the plaintiff. *Beck v. Baltimore Transit Co.,* 190 Md. 506, 509, 58 A. 2d 909 (1948). It appears that the defendant's exception to the court's instruction with respect to "general" and "special" damages was sufficiently raised, but it did not constitute a basis for reversal. Punitive damages are, of course, allowable where a communication is libelous *per se* and no justification is shown. *Evening News Co. v. Bowie,* 154 Md. 604, 608, 141 A. 416 (1928).

For the reasons herein stated the judgment will be affirmed.

*Judgment affirmed, the appellant*
*to pay the costs.*