35 A.3d 1140

Nicholas A. PISCATELLI

v.

Van SMITH, et al.

No. 18, Sept. Term, 2011.

Court of Appeals of Maryland.

Jan. 23, 2012.

300

---

Peter A. Prevas (Prevas & Prevas, Baltimore, MD), on brief, for petitioner.

Peter F. Axelrad (Michael S. Steadman, Jr. of Council, Baradel, Kosmerl & Nolan, P.A., Annapolis, MD), on brief, for respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBARA, JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

HARRELL, J.

American poet, author, and essayist William Carlos Williams wrote, "It is not what you say that matters but the manner in which you say it. There lies the secret of the ages." *Selected Essays,* preface at i (1954). Respondents in the present case, CEGW, Inc., owner of the Baltimore-based *City Paper,* and Van Smith (Smith), a reporter, published in 2006–07 two articles in the *City Paper* that reported on the 2003 double murder in Baltimore of Jason Convertino (Convertino) and Sean Wisniewski (Wisniewski). Petitioner, Nicholas A. Piscatelli (Piscatelli), who was mentioned unflatteringly in the articles, perceived that his reputation had been injured thereby and he had been portrayed in a false light. Piscatelli sued Respondents in the Circuit Court for Baltimore City for damages based on defamation and false light claims. The Circuit Court granted Respondents' motion for summary judgment, which judgment the Court of Special Appeals affirmed subsequently upon Piscatelli's appeal. Having granted Piscatelli's petition for writ of certiorari, we shall conclude ultimately that the manner in which Respondent published those statements placed them within the protective embrace of the fair reporting and fair comment privileges, and consequently, Piscatelli's claims were not actionable. Therefore, we affirm as a matter of law.

## I. FACTS AND PROCEDURAL HISTORY

In 2006 and 2007, Smith authored, and the *City Paper* published, two articles (one in each year) revisiting the 2003 murders of Convertino and Wisniewski and the trial of Anthony Jerome Miller (Miller) for those crimes. Respondents published the first article, entitled "Late Discovery," on 6 December 2006, and published the second, entitled "The Lonely Killer," on 20 June 2007. Both articles more than hinted that Piscatelli may have been involved in the murders, despite

that he was not charged criminally in connection with the crimes.

Convertino and Wisniewski were murdered on or about 11 April 2003, in the Fells Point neighborhood of Baltimore. Prior to his death, Convertino worked for Redwood Trust, a Baltimore nightclub located in a former bank building (hence the name of the nightclub), managing and procuring music acts for the club. Wisniewski worked also for Redwood Trust, as well as for a nightlife promotions company that held events at Redwood Trust occasionally. Piscatelli owned Redwood Trust.

Two years after the murders, a police investigation concluded that Miller committed the crimes. The State charged him on 17 February 2006. Miller was tried and found guilty in the Circuit Court for Baltimore City of two counts of second degree murder and sentenced to two consecutive 30–year prison terms.

Insofar as Piscatelli was concerned, Respondents highlighted in their articles two particular aspects of the Miller trial. First, on or about 27 October 2006, the State's Attorney provided to Miller's defense counsel a memorandum containing supplemental discovery responses. The memorandum contained the following summary of a conversation Convertino's mother, Pam Morgan (Morgan), had with police detectives investigating the murders:

> Pam Morgan has stated that an unknown man approached her at a benefit in Binghamton, New York, held for her son's child shortly after his murder. The man advised her that Nick Piscatelli was behind her son's murder, he covered his tracks and hired someone to kill him.

This memorandum became part of the criminal case file and the public record, although it was not offered in evidence at Miller's trial.

The second feature of the newspaper reporting relevant to Piscatelli was that Miller's defense counsel and the prosecutor examined Piscatelli as a witness during Miller's trial. The prosecutor asked Piscatelli bluntly if he had anything to do

with the murder of Convertino; Piscatelli responded that he did not. Piscatelli testified also that: Convertino had been planning to leave Redwood Trust for a similar position with a rival nightclub; Convertino planned to switch Sean "P. Diddy" Combs, a popular musician at that time, from performing at Redwood Trust to the rival nightclub; and, Piscatelli suspected Convertino of taking larger commissions than he was due during his employment at Redwood Trust.

Respondents reported the statement from the supplemental discovery memorandum in both articles and Piscatelli's Miller trial testimony in the 20 June 2007 article. Respondents included in the articles additional relevant comments that may be distilled into three themes: the double murder remains "mysterious," despite Miller's conviction; Piscatelli may have had a motive to kill Convertino; and, Morgan believed Piscatelli may be involved in her son's murder.

Based on these articles, Piscatelli filed a complaint in the Circuit Court on 5 December 2007, advancing counts of defamation and false light against Respondents, Smith and CEGW, Inc. Respondents retorted with a motion for summary judgment, arguing, as they do before us, that Piscatelli failed to establish that Respondents' statements were false and the fair reporting and fair comment privileges protected any allegedly defamatory material. Piscatelli, in his opposition to summary judgment in the trial court, contended that accusations of his involvement in the murders were false and Respondents abused their fair reporting and fair comment privileges. On 17 February 2009, the trial judge issued a written order stating, without further explication, that there was no dispute of material fact and Respondents were entitled to judgment as a matter of law.

Piscatelli filed timely an appeal to the Court of Special Appeals, maintaining that the Circuit Court granted improperly summary judgment because Respondents abused their fair reporting and fair comment privileges. The panel of the Court of Special Appeals concluded ultimately, in a reported opinion, that the trial judge granted properly summary judg-

ment because Respondents' statements were privileged and not defamatory. *Piscatelli v. Smith,* 197 Md.App. 23, 41–42, 12 A.3d 164, 175 (2011).

Piscatelli filed timely a petition for writ of certiorari with this Court, which we granted. 419 Md. 646, 20 A.3d 115 (2011). He presents two questions for our consideration: whether the Circuit Court granted improperly summary judgment regarding the fair reporting privilege because Respondents abused that privilege, and whether the fair comment privilege applies to derogatory opinions based on purportedly defamatory statements.[1]

## II. STANDARD OF REVIEW

The standard of appellate review of the grant of summary judgment is whether the trial court was legally correct, because the trial court decides issues of law, and not disputes of fact, when considering a motion for summary judgment. *Rosenberg v. Helinski,* 328 Md. 664, 674, 616 A.2d 866, 871 (1992) (citing, among other cases, *Heat & Power v. Air Prods.,* 320 Md. 584, 591–92, 578 A.2d 1202, 1206 (1990)). A trial court may grant summary judgment if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Md. Rule 2–501(e)). For purposes of the analysis, reasonable factual inferences from the well-pled factual allegations are assumed in favor of the non-moving party. *Orrison v. Vance,* 262 Md. 285, 292, 277 A.2d 573, 576 (1971) (citing *Brown v. Suburban Cadillac,* 260 Md. 251, 255, 272 A.2d 42, 44 (1971)).

## III. DISCUSSION

Piscatelli advanced two counts in his complaint: defamation and invasion of privacy (false light). We shall address

---

1. Piscatelli phrased the questions presented as "Did the Court of Special Appeals err in deciding that summary judgment was properly granted based upon the fair reporting privilege?" and "Did the Court of Special Appeals err in deciding that summary judgment was properly granted based upon the fair comment and opinion privileges?"

in greatest detail Piscatelli's defamation claim, but need not address the false light claim separately. An allegation of false light must meet the same legal standards as an allegation of defamation. *Harnish v. Herald–Mail Co.*, 264 Md. 326, 337, 286 A.2d 146, 152–53 (1972); *Phillips v. Wash. Magazine, Inc.*, 58 Md.App. 30, 36 n. 1, 472 A.2d 98, 101 n. 1 (1984). We shall conclude ultimately that Respondents did not defame Piscatelli actually, rendering superfluous a separate analysis of his false light claim.

In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder: " '(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.' " *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441, 966 A.2d 432, 448 (2009) (quoting *Offen v. Brenner*, 402 Md. 191, 198, 935 A.2d 719, 723–24 (2007)). For purposes of the first element, a "defamatory statement" is one that tends to expose a person to " 'public scorn, hatred, contempt, or ridicule,' " which, as a consequence, discourages " 'others in the community from having a good opinion of, or associating with, that person.' " *Brodie*, 407 Md. at 441, 966 A.2d at 448 (quoting *Offen*, 402 Md. at 198–99, 935 A.2d at 724). Under the second element, a "false" statement is one "that is not substantially correct." *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191, 1213 (1992). The plaintiff carries the burden to prove falsity. *Id.* To determine whether a publication is defamatory, a question of law for the court, the publication must be read as a whole: " '[W]ords have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed.' " *Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 295, 661 A.2d 1169, 1174 (1995) (quoting *Batson*, 325 Md. at 723, 602 A.2d at 1210).

Where a defendant asserts a privilege in a motion for summary judgment in a defamation action, we consider first

whether the asserted privilege applies. *See Rosenberg v. Helinski,* 328 Md. 664, 675–76, 616 A.2d 866, 871–72 (1992); *Orrison v. Vance,* 262 Md. 285, 292–93, 277 A.2d 573, 576 (1971); *Peroutka v. Streng,* 116 Md.App. 301, 312, 695 A.2d 1287, 1293 (1997). Thus, we assume that the plaintiff's allegations of defamation are true for purposes of evaluating whether the privilege exists. *Rosenberg,* 328 Md. at 675–76, 616 A.2d at 871–72; *Orrison,* 262 Md. at 292–93, 277 A.2d at 576; *Peroutka,* 116 Md.App. at 312, 695 A.2d at 1293.

In some circumstances, an absolute or qualified privilege defeats a claim of defamation, if the defendant did not abuse that privilege. *Hanrahan v. Kelly,* 269 Md. 21, 29–30, 305 A.2d 151, 156 (1973) (citing *Wetherby v. Retail Credit Co.,* 235 Md. 237, 241, 201 A.2d 344, 347 (1964)). " 'An absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused.' " *Smith v. Danielczyk,* 400 Md. 98, 117, 928 A.2d 795, 806 (2007) (quoting *Di Blasio v. Kolodner,* 233 Md. 512, 522, 197 A.2d 245, 250 (1964)).

Here, Respondents contended that two conditional privileges insulated their allegedly defamatory remarks: the fair reporting and fair comment privileges. Whether a conditional privilege exists is a question of law, and the defendant bears the burden of proof to establish the privilege. *Woodruff v. Trepel,* 125 Md.App. 381, 402, 725 A.2d 612, 622 (1999) (citing *Simon v. Robinson,* 221 Md. 200, 205, 154 A.2d 911, 914 (1959)). Once a prima facie case for a privilege is adduced, the plaintiff must produce facts, admissible in evidence, demonstrating the defendant abused the privilege, in order to generate a triable issue for the fact-finder. *Hanrahan,* 269 Md. at 29, 305 A.2d at 156; *Kapiloff v. Dunn,* 27 Md.App. 514, 530–32, 343 A.2d 251, 262 (1975). To demonstrate abuse of the privilege, the plaintiff must demonstrate that the defendant made his or her statements with malice, defined as "a person's actual knowledge that his [or her] statement is false,

coupled with his [or her] intent to deceive another by means of that statement." *Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216, 240, 652 A.2d 1117, 1129 (1995); *see also Le Marc's Mgmt. Corp. v. Valentin*, 349 Md. 645, 651–56, 709 A.2d 1222, 1225–28 (1998) (adopting the *Ellerin* malice standard for awarding punitive damages and proving abuse of defamation privileges).[2] All relevant circumstances are admissible when determining whether a defendant abused a common law defamation privilege, "including the defendant's reasonable belief in the truth of his statements, the excessive nature of the language used, whether the disclosures were unsolicited, and whether the communication was made in a proper manner and only to proper parties." *Orrison*, 262 Md. at 295, 277 A.2d at 578 (internal citations omitted); *see also Woodruff*, 125 Md. App. at 402–03, 725 A.2d at 623. While malice is usually a question for the fact-finder, it need not be submitted to the fact-finder when the plaintiff fails to allege or prove facts that would support a finding of malice. *Chesapeake Publ'g Corp.*, 339 Md. at 302, 661 A.2d at 1177; *Orrison*, 262 Md. at 294, 277 A.2d at 577; *Woodruff*, 125 Md.App. at 402, 725 A.2d at 622 (citing *Simon*, 221 Md. at 205–06, 154 A.2d at 914–915) ("Once a judge determines that a privilege exists, the question of whether the privilege was abused is for the jury, subject to the censorial power of the judge where there is no evidence of malice, and the burden on the issue is on the plaintiff.").

---

**2.** Neither Piscatelli nor Respondents engaged on appeal the question of whether Piscatelli, because of his conduct relating to the Miller trial, is a private figure or public figure. Ordinarily, whether the plaintiff is a public or private figure dictates whether a plaintiff must prove his or her claim on a negligence or malice basis. *Compare Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 297, 661 A.2d 1169, 1175 (1995) (public figure) *with Hearst Corp. v. Hughes*, 297 Md. 112, 123, 466 A.2d 486, 491–92 (1983) (private figure). We said in *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 600, 350 A.2d 688, 700 (1976), however, "that in a case where a common law conditional privilege is found to exist, the negligence standard of *Gertz* is logically subsumed in the higher standard for proving malice ... and therefore becomes irrelevant to the trial of the case. Were the plaintiff who is confronted with a conditional privilege incapable of proving the malice necessary to overcome that hurdle, it would be of no consequence that he might have met the lesser standard of negligence."

A. The Fair Reporting Privilege

1. Generally

With this foregoing background setting in mind, we address Piscatelli's first contention: that Respondents' abuse of the fair reporting privilege was, on this record, a triable issue for a jury. Piscatelli argues this is "not appropriate for resolution by summary judgment .... unless the record is absolutely devoid of any evidence that the *City Paper* did not fairly and accurately report" what transpired over the course of Miller's prosecution, in so far as Piscatelli was mentioned. Because we conclude that the record extract before us is devoid of unfair or inaccurate reporting, Piscatelli failed to meet the burden of production necessary to create an issue for a fact-finder of whether abuse of the privilege occurred.

The fair reporting privilege is a qualified privilege to report legal and official proceedings that are, in and of themselves defamatory, so long as the account is "fair and substantially accurate." *Chesapeake Publ'g Corp. v. Williams,* 339 Md. 285, 296, 661 A.2d 1169, 1174 (1995) (citing *Rosenberg v. Helinski,* 328 Md. 664, 676–77, 616 A.2d 866, 872 (1992)). The privilege arises from the public's interest in having access to information about official proceedings and public meetings. Restatement (Second) of Torts § 611 cmt. a (1977); *see also Rosenberg,* 328 Md. at 679–80, 616 A.2d at 873–74. A defendant abuses his or her fair reporting privilege, not upon a showing of actual malice (as with other common law conditional privileges),[3] but when the defendant's account " 'fails the

---

**3.** Traditionally, a plaintiff could overcome the fair reporting privilege by proving actual malice. In *Rosenberg,* however, we adopted the modern view regarding the fair reporting privilege, which "discards the search for malice, and simply requires that the report be fair and substantially correct." *Rosenberg v. Helinski,* 328 Md. 664, 677–78, 616 A.2d 866, 872–73 (1992) (citing, among other cases, *Brush–Moore Newspapers, Inc. v. Pollitt,* 220 Md. 132, 138, 151 A.2d 530, 533–34 (1959)). We pointed out that the fair reporting privilege, "while not absolute, [is] somewhat broader in its scope than other conditional privileges." *Rosenberg,* 328 Md. at 677–78, 616 A.2d at 872–73 (citing Restatement (Second) of Torts § 611 cmt. a (1977)).

■■■■■■■■■■

test of fairness and accuracy.'" *Chesapeake Publ'g Corp.*, 339 Md. at 297, 661 A.2d at 1175 (citing *Rosenberg*, 328 Md. at 677–78, 616 A.2d at 872–73). Fairness and accuracy is satisfied when the reports are substantially correct, impartial, coherent, and bona fide. *Batson v. Shiflett*, 325 Md. 684, 727, 602 A.2d 1191, 1213 (1992) (citing *McBee v. Fulton*, 47 Md. 403, 417, 426 (1878)). Although whether a report is fair and accurate is ordinarily a question of fact for the fact-finder, *Batson*, 325 Md. at 727, 602 A.2d at 1213, summary judgment is appropriate where the plaintiff fails to point to evidence of unfairness and inaccuracy. *See Rosenberg*, 328 Md. at 679, 616 A.2d at 873 (affirming summary judgment where defendant established the fair reporting privilege and there was "no trace of malice").

2. The Fair Reporting Privilege Applies to Respondents' Reporting of the Supplemental Discovery Memorandum and Piscatelli's Trial Testimony

■■■ In the present case, the fair reporting privilege applies to Respondents' reporting of the excerpt from the supplemental discovery memorandum and the summary of Piscatelli's trial testimony. As to the supplemental discovery memorandum, Respondents wrote in the two articles:

On Oct. 27, [the prosecutor] disclosed in a memorandum to the defense that "Pam Morgan [Convertino's mother] has stated that an unknown man approached her at a benefit in Binghamton, New York, held for her son's child shortly after his murder. The man advised her that Nick Piscatelli was behind her son's murder, he covered his tracks and hired someone to kill him." The memo does not indicate when Morgan shared this information with investigators, but she told City Paper during a Nov. 30 phone interview that the event was held in May 2003, just weeks after the murders.

. . . .

"At the benefit, this guy comes up to me and he says he knows who was behind my son's murder," Morgan recalls. "I didn't know Nick [Piscatelli] at that point." . . . . "[The

unknown man] came in, talked, and left," she continues. "I was like, "Whoa!". . . .

One of the things she shared with the police had to do with Piscatelli. About a month after the killings, in May 2003, a benefit was held near Binghamton to raise money for Convertino's young daughter. About 500 people showed up, and while it was going on, Morgan says she was approached by a man she'd never seen before and hasn't seen since. "He said that Nick Piscatelli was behind my son's murder," Morgan recalls, "that [Piscatelli had] hired someone to do it, and that he'd covered his tracks."

These statements fall within the purview of the fair reporting privilege. In *Chesapeake Publishing Corp.*, we concluded that information in a court case file is covered by the fair reporting privilege, if the reporter's account of that information is fair and substantially accurate. 339 Md. at 302, 661 A.2d at 1177. Here, the supplemental discovery memorandum was part of the Miller criminal case file and, despite not being offered in evidence at trial, was a public record that may be reported without liability for defamation, so long as the report is fair and accurate.

■ Respondents' summary of Piscatelli's testimony during Miller's trial was:

Take, for instance, the motive that Convertino's boss may have had. Convertino was hired to manage Redwood Trust by Nicholas Piscatelli, a successful Baltimore real-estate developer. Piscatelli meticulously restored a historic downtown bank building that had survived the Great Baltimore Fire of 1904 to house his posh nightclub. Convertino, witnesses testified at Miller's trial, was planning to take his proven skills as a scene-maker to one of Redwood Trust's competitors, Bohager's Bar and Grill, when the murders happened. More specifically, Convertino was scheming to take a P. Diddy event that was scheduled to happen at Redwood Trust on April 13, 2003, to Bohager's instead; after the murders, on April 11, P. Diddy appeared at Redwood Trust, as originally planned. What's more, Pisca-

telli suspected Convertino of stealing not just shows, but money from Redwood Trust.

 The fair reporting privilege embraces post-trial re-counts of trial testimony. *Rosenberg,* 328 Md. at 680–81, 616 A.2d at 874–75. In *Rosenberg,* the defendant in the civil suit was an expert witness in a child custody hearing who testified that the father abused sexually his daughter. *Rosenberg,* 328 Md. at 669, 616 A.2d at 868. As Rosenberg exited the courthouse, he was interviewed by a local television reporter, to whom he offered a summary of his testimony. *Rosenberg,* 328 Md. at 670, 616 A.2d at 869. Rosenberg's statements were found ultimately to be not defamatory because the fair reporting privilege protected them. *Rosenberg,* 328 Md. at 682–83, 616 A.2d at 875. In the present case, Respondents summarized in the 2007 *City Paper* article Piscatelli's testimo-ny at Miller's trial. The fair reporting privilege applies to it.

3. Piscatelli Did Not Establish that Respondents Abused the Fair Reporting Privilege

 Respondents' reports of the supplemental discovery memorandum are fair and accurate. The first paragraph of the relevant passage that reports about the memorandum is an exact quotation from the memorandum. The second and third paragraphs detail Morgan's recollection of the events that precipitated the response in the memorandum. Her recollection is consistent with the contents of the memoran-dum and does not add additional details or allegations; that is, her recollection of the event "was fair in that 'the overall impression created by the summary was no more defamatory than that created by the original.'" *Rosenberg,* 328 Md. at 684, 616 A.2d at 875 (quoting *Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 270 (7th Cir.1983)). Piscatelli did not adduce facts tending to show that the report was unfair and inaccurate; therefore, no abuse of the fair reporting privilege was presented to be judged by a fact-finder.

 Respondents' report of Piscatelli's testimony was also fair and accurate. Regarding accuracy, the report depicts

accurately the testimony. Piscatelli's testimony spanned 13 pages of transcript from Miller's trial. Respondents' summary of those 13 pages was a reasonable abbreviation of Piscatelli's entire testimony. *See Rosenberg,* 328 Md. at 683–84, 616 A.2d at 875. Further, Piscatelli conceded during his discovery deposition in the present litigation that this paragraph was a truthful—and therefore accurate—summary of his testimony.

Respondents' report about Piscatelli's testimony was also fair: it "did not result in a materially misleading account of the hearing." *Rosenberg,* 328 Md. at 682, 616 A.2d at 875. Immediately after summarizing Piscatelli's testimony, the article states, "[The prosecutor] took on this nettlesome situation directly during the trial: She called Piscatelli to testify." Thus, the article explains that the details of Piscatelli's relationship with Convertino arose during Piscatelli's direct testimony when called as a State's witness. The article recounts also how the defense attorney cross-examined Piscatelli, demonstrating that it was Miller's defense attorney who attempted to suggest that Piscatelli had a motive to kill Convertino, thus seeking to divert the focus from Miller.

Although perhaps an unflattering account of Piscatelli's relationship with Convertino, Respondents' report was an accurate, fair account of Piscatelli's testimony. Piscatelli failed to advance any facts to demonstrate otherwise. There was no triable issue for a jury. Because there was no triable issue as to abuse of the fair reporting privilege regarding the supplemental discovery memorandum or Piscatelli's testimony, the Circuit Court granted properly Respondents' motion for summary judgment regarding this conditional privilege defense. *See Rosenberg,* 328 Md. at 683–84, 616 A.2d at 875–76.

### B. The Fair Comment Privilege

Piscatelli argues that the fair comment privilege is inapplicable because Respondents based their comments on purport-

edly defamatory, unprivileged facts.[4] We disagree.

■■■■■■■ Maryland recognizes that, under the fair comment privilege,[5]

> [A] newspaper like any member of the community may, without liability, honestly express a fair and reasonable opinion or comment on matters of legitimate public interest. The reason given is that such discussion is in the furtherance of an interest of social importance, and therefore it is held entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation.

*A.S. Abell Co. v. Kirby*, 227 Md. 267, 272, 176 A.2d 340, 342 (1961). Thus, the fair comment privilege is available for opinions or comments regarding matters of legitimate public interest. In *Kirby*, we discussed the fair comment privilege regarding opinions expressed about a review hearing of a

---

**4.** The application of the fair comment privilege in this case begs an additional question not raised by either Piscatelli or Respondents: whether the fair comment privilege applies equally to opinions expressed about public figures and private figures. Although the parties disagreed in the Circuit Court whether Piscatelli is a public or private figure, they did not maintain on appeal their public/private figure arguments. The fair comment privilege, however, seems to apply to public figures, as was the case in *A.S. Abell Co. v. Kirby*, 227 Md. 267, 270–72, 176 A.2d 340, 341–43 (1961), as well as to private figures. *Magnusson v. N.Y. Times Co.*, 98 P.3d 1070, 1080 (Okla.2004) ("[M]edia defendants may utilize the common law privilege of fair comment, affording individuals the opportunity for honest expressions of opinion on matters of legitimate public interest based on true or privileged statements of fact, to defend against a defamation cause filed by a private person.").

**5.** The defense of fair comment is a venerable common law privilege. Some legal scholars posit that *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) superceded the fair comment privilege. *See, e.g.*, 8 Stuart M. Speiser et al., *The American Law of Torts* § 29:34 (1991); Restatement (Second) of Torts § 566 rep. n. to cmt. c (1977). Maryland law, however, has not adopted this position. The Court of Special Appeals noted, "We do not read the Supreme Court decisions so broadly. Except for dictum in *Gertz*, nothing in *New York Times* or its progeny indicates that the Court has created an absolute privilege for all expressions of opinion on public matters and therefore eliminated the defense of 'fair comment.' " *Kapiloff v. Dunn*, 27 Md.App. 514, 529, 343 A.2d 251, 261 (1975).

Baltimore police commissioner, inferring that it was a matter of legitimate public interest. 227 Md. at 282–83, 176 A.2d at 348–49. In *Kapiloff v. Dunn*, the Court of Special Appeals concluded that the performance ratings of high-school principals were also a matter of legitimate public interest. 27 Md.App. 514, 533–34, 343 A.2d 251, 264 (1975). Although Maryland case law has not addressed whether the occurrence or prosecution of crimes, and murder specifically, are matters of legitimate public interest, other courts have. *See Gay v. Williams*, 486 F.Supp. 12, 16 (D.Alaska 1979) (drug trafficking); *Ratner v. Young*, 465 F.Supp. 386, 396–97 (D.Vi.1979) (murder); *Rouch v. Enquirer & News of Battle Creek, Mich.*, 427 Mich. 157, 398 N.W.2d 245, 266–68 (1986) (rape). This principle seems obvious. Therefore, the reporting about the murders and criminal trial of the presumed perpetrator at the bottom of this civil litigation are matters of legitimate public interest.

 Whether a particular publication comes within the purview of this privilege "often turns on whether or not it contains misstatements of fact as distinguished from expression of opinion." *Kirby*, 227 Md. at 273, 176 A.2d at 342. The test for determining whether a published statement is a fact or opinion is, "Would an ordinary person, reading the matter complained of, be likely to understand it as an expression of the writer's opinion or as a declaration of an existing fact?" *Kirby*, 227 Md. at 274, 176 A.2d at 343. The fair comment privilege protects an opinion only where " 'the facts on which it is based are truly stated or privileged or otherwise known either because the facts are of common knowledge or because, though perhaps unknown to a particular recipient of the communication, they are readily accessible to him.' " *Kirby*, 227 Md. at 279–80, 176 A.2d at 346 (quoting 1 Harper and James, *The Law of Torts* § 5.28 (1954)). Conversely, an opinion based on undisclosed facts, or that permits the inference of an undisclosed factual basis, is not privileged. *Kirby*, 227 Md. at 274, 176 A.2d at 343. In *Kapiloff,* the Court of Special Appeals explained further the difference between pro-

tected and unprotected opinions under the fair comment privilege:

> When [commentary on a matter of public interest] is not based upon stated facts or upon facts otherwise known or readily available to the general public, it is treated as a factual statement and possible constitutional immunity is determined on that basis. Where the statements, however, are actual expressions of opinion, based upon stated or readily known facts, their objective truth or falsity depends on the veracity of these underlying facts. Therefore, any determinations with regard to falsity or the presence of actual malice must look to the stated or known facts which form the basis for the opinion....

27 Md.App. at 533, 343 A.2d at 263–64.

 Maryland law regarding the types of opinions protected by the fair comment privilege is in accord with the Restatement of Torts (Second), which summarizes succinctly the difference between protected and unprotected opinions for purposes of the fair comment privilege. Derogatory opinions based on false and defamatory or undisclosed facts are not privileged. *Kirby*, 227 Md. at 272–74, 176 A.2d at 342–44; *Kapiloff*, 27 Md.App. at 533, 343 A.2d at 263–64; *accord* Restatement (Second) of Torts § 566 cmt. b & c (1977). These are called mixed opinions. Restatement (Second) of Torts § 566 cmt. b. Derogatory opinions based on non-defamatory facts, true facts, privileged facts, or facts assumed mutually by the opinion-maker and recipient are privileged. *Kirby*, 227 Md. at 272–74, 176 A.2d at 342–44; *Kapiloff*, 27 Md.App. at 533, 343 A.2d at 263–64; *accord* Restatement (Second) of Torts § 566 cmt. b & c. These are labeled simple or pure opinions. Restatement (Second) of Torts § 566 cmt. b. Thus, under Maryland law, the fair comment privilege protects simple opinions from being defamatory, but does not protect mixed opinions.

 Piscatelli argues in his brief that the Court of Special Appeals applied incorrectly the fair comment privilege because Respondents' expressed opinions were based on the supple-

mental discovery memorandum and/or Piscatelli's testimony, which he alleges were defamatory. We concluded earlier in this opinion, however, that Respondents' reporting of the memorandum and Piscatelli's trial testimony are privileged as fair reporting. Simple opinions, which are protected by the fair comment privilege, include derogatory opinions based on privileged statements of fact. *Kirby*, 227 Md. at 279, 176 A.2d at 343 (quoting 1 Harper and James, *supra*, § 5.28) ("[C]riticism is privileged as fair comment only when the facts on which it is based are truly stated or *privileged* or otherwise known . . . ." (emphasis added)); *accord* Restatement (Second) of Torts § 566 cmt. c, illus. 5(2).[6] Respondents' articles include privileged reports on the memorandum and Piscatelli's testimony as bases for its opinions, enabling readers to judge for themselves the quality of the opinions. *Kirby*, 227 Md. at 280, 176 A.2d at 347 (quoting *Odgers on Libel and Slander* 166 (6th. ed.1929)). " '[T]herefore, what would otherwise have been an allegation of fact becomes merely a comment,' " or a simple opinion, which the fair comment privilege declaws of its defamatory expression. *Id.* (quoting *Odgers on Libel and Slander*, *supra*, at 166). The Circuit Court and the Court of Special Appeals were correct that summary judgment was a proper disposition of the fair comment privilege defense.

## IV. CONCLUSION

Piscatelli failed to adduce facts that would be admissible in evidence to demonstrate that Respondents' reporting about

---

**6.** Restatement (Second) of Torts § 566 cmt. c, illus. 5(2) states the following:

> If the defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement—nor for the expression of opinion, so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion. The same result is reached if the statement of facts is defamatory but the facts are true or if the defendant is not shown to be guilty of the requisite fault regarding the truth or defamatory character of the statement of facts, or *if the statement of facts is found to be privileged.* (Emphasis added.)

Miller's trial was unfair and inaccurate, a burden he bore in order to present a triable issue for a jury as to whether Respondents abused the fair reporting privilege. Additionally, where Respondents expressed in the articles simple opinions based on disclosed, privileged statements, those opinions are themselves privileged as fair comment. For these reasons, the Circuit Court granted properly Respondents' motion for summary judgment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONER TO PAY COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.**