WILKINSON, Circuit Judge, concurring:
 

 I am pleased to join Chief Judge Gregory's fine opinion. It is an eloquent defense and application of neutral principles of law, no matter what the context.
 

 I wish only to underscore my colleague's concern about the perils of appellees' defamation claim. State's Attorney Mosby is an elected official. After the death of Freddie Gray, her community, her constituents, and her city faced a crisis of confidence. Baltimore's citizens had their faith shaken, not only in the police, but in the very ability of government to administer justice. As any of us would expect of our political leaders, Mosby responded to a crisis. And as all of us should demand from our political leaders, Mosby explained her actions to the public. At a press conference, she read from a charging document, praised investigators, and explained the basis of the prosecution. To say that an elected official exposes herself to liability by discharging
 her democratic duty to justify the decisions she was elected to make is to elevate tort law above our most cherished constitutional ideals.
 

 The First Amendment requires public officials, such as the police officers who brought this suit, to make a showing of "actual malice" in an action for defamation relating to their official duties.
 
 See
 

 New York Times v. Sullivan
 
 ,
 
 376 U.S. 254
 
 ,
 
 84 S.Ct. 710
 
 ,
 
 11 L.Ed.2d 686
 
 (1964). That much is not in question. But powerful speech interests arise not only when public officials bring defamation actions, but when public officials are
 
 subject
 
 to them. Just as
 
 Sullivan
 
 recognized the sacred right of the citizen to criticize his government free from the threat of legal damages, the First Amendment also protects the public official's ability to explain his actions to his constituents. This free exchange between government and governed legitimates and nourishes our democratic system. For the First Amendment was founded on the belief "that the greatest menace to freedom is an inert people; that public discussion is a political duty; and that this should be a fundamental principle of the American government."
 
 Whitney v. California
 
 ,
 
 274 U.S. 357
 
 , 375,
 
 47 S.Ct. 641
 
 ,
 
 71 L.Ed. 1095
 
 (1927) (Brandeis, J., concurring).
 

 This is not to say that a prosecutor can never face consequences for reckless public remarks. But the proper avenue for regulating prosecutorial statements is a state's ethical code governing attorneys, not private tort suits. Under Maryland's Rules of Professional Conduct, for example, a prosecutor may face discipline if he makes "extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused," or "extrajudicial statements that have a substantial likelihood of prejudicing an adjudicatory proceeding." Maryland Attorneys' Rules of Professional Conduct, Rule 19-303.8. Notably exempt from that rule, however, are those "statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose."
 
 Id
 
 . Mosby's comments were of precisely that ilk. And for similar reasons, her comments were privileged under state law.
 
 See
 

 Piscatelli v. Van Smith
 
 ,
 
 424 Md. 294
 
 ,
 
 35 A.3d 1140
 
 , 1152 (2012) (privileging "opinions or comments regarding matters of legitimate public interest" such as "the occurrence or prosecution of crimes");
 
 Smith v. Danielczyk
 
 ,
 
 400 Md. 98
 
 ,
 
 928 A.2d 795
 
 , 816 (2007) (privileging statements "required or permitted in the performance of [a public official's] official duties").
 

 The defamation action here not only attempts to dilute the protections of
 
 New York Times v. Sullivan
 
 . It would weaken the defense of absolute prosecutorial immunity set forth by the Supreme Court in
 
 Imbler v. Pachtman
 
 ,
 
 424 U.S. 409
 
 ,
 
 96 S.Ct. 984
 
 ,
 
 47 L.Ed.2d 128
 
 (1976). One of the dangers against which
 
 Imbler
 
 warned was the use of hindsight, in this case the trial verdicts, to give rise to a § 1983 action or something akin to a state malicious prosecution claim. It is plain that the "the vigorous and fearless performance of the prosecutor's duty" would be eroded along with robust public discourse.
 
 See
 

 Imbler
 
 ,
 
 424 U.S. at 427
 
 ,
 
 96 S.Ct. 984
 
 .
 

 By advancing a theory of tort liability for explanations of official acts, the officers here strike at the very heart of the democratic dialogue. Courts must repel such attacks. In doing so, we honor our "profound national commitment to the principle that debate on public issues should be unlimited, robust, and wide-open" on all sides.
 
 Sullivan
 
 ,
 
 376 U.S. at 270
 
 ,
 
 84 S.Ct. 710
 
 .
 

 Defamation law unbound is inimical to free expression. I thought the principle of
 
 New York Times v. Sullivan
 
 secure. But no. As the saying goes, the censors never sleep. Here they come again.