Katherine Seley-Radtke v. Ramachandra S. Hosmane, No. 19, September Term, 2016

**PURELY PRIVATE DEFAMATION – STANDARD OF PROOF TO OVERCOME COMMON LAW CONDITIONAL PRIVILEGE – PREPONDERANCE OF EVIDENCE –** Court of Appeals held that standard of proof required to overcome common law conditional privilege in purely private defamation action is preponderance of evidence; clear and convincing evidence is not required to overcome conditional privilege based in common law and not in First Amendment. Court of Appeals concluded that important State interest of protecting private individuals from defamation is best served by allowing plaintiff to defeat common law conditional privilege by preponderance of evidence. Requiring plaintiffs to overcome common law conditional privilege by clear and convincing evidence would be inconsistent with Maryland's established jurisprudence.

Circuit Court for Baltimore County
Case No. 03-C-12-007007

Argued: October 11, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 19

September Term, 2016

_____

KATHERINE SELEY-RADTKE

v.

RAMACHANDRA S. HOSMANE

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.
McDonald and Getty, JJ., dissent.

_____

Filed: November 22, 2016

This case involves a matter of first impression requiring this Court to determine the standard of proof necessary to overcome a common law conditional privilege in a purely private defamation action.[1] Purely private defamation involves a defamation action that arises "when the reputation of a private individual is tarnished by a report of a private matter not of general or public concern[.]" Jacron Sales Co. v. Sindorf, 276 Md. 580, 588, 350 A.2d 688, 693 (1976). Although this Court and the Court of Special Appeals have addressed issues concerning the standard of proof of fault in defamation cases, we have not been specifically asked to decide the standard of proof necessary to overcome a common law conditional privilege in a purely private defamation action. In addressing this matter of first impression, we are confronted with two alternative standards: proof by a preponderance of the evidence or proof by clear and convincing evidence.

Although defamation jurisprudence traces its origins to a number of seminal First Amendment cases of the United States Supreme Court, the resolution of defamation claims brought by private individuals has largely been left to the province of State courts. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 347-48 (1974). In cases of purely private defamation, this Court has held that proof of fault must meet the standard of the

---

[1] "Under Maryland law, to present a prima facie case for defamation, a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm." Gohari v. Darvish, 363 Md. 42, 54, 767 A.2d 321, 327 (2001) (citation and paragraph break omitted). "A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." Id. at 54, 767 A.2d at 327 (citation and internal quotation marks omitted).

preponderance of the evidence, the quantum of proof ordinarily required in other types of actions for negligence. See Jacron, 276 Md. at 596-97, 350 A.2d at 697-98. Specifically, this Court has held that a "standard of negligence" as set forth in the Restatement (Second) of Torts § 580B (Am. Law Inst. 1977),[2] is to be applied in cases of purely private defamation. Jacron, 276 Md. at 596, 350 A.2d at 697. Under this standard, the burden of proving falsity falls upon the plaintiff, rather than the burden of proving the truth of the alleged defamatory statement falling upon the defendant. Id. at 597, 350 A.2d at 698. If the defendant asserts a common law conditional privilege, the plaintiff bears the additional burden of overcoming that privilege to prevail on the defamation claim.

It is well established that, in a defamation action, a defendant may assert a qualified or conditional privilege. See Gohari v. Darvish, 363 Md. 42, 55, 767 A.2d 321, 327 (2001). A common law conditional privilege arises from the principle that a defendant may not be held liable for an otherwise provable defamatory statement if publication of the statement advances social interests that outweigh a plaintiff's reputational interest. See Marchesi v. Franchino, 283 Md. 131, 135, 387 A.2d 1129, 1131 (1978). A defendant may also assert what has been described in case law as a First Amendment conditional privilege. The Supreme Court has stated that statements pertaining to public officials and to public figures on matters of public concern merit special protection in our society; thus, such statements are subject to a conditional privilege—the First Amendment conditional privilege—that is

---

[2]At the time of our decision in Jacron, 276 Md. at 596, 350 A.2d at 697, the pertinent section of the Restatement (Second) of Torts was a tentative draft: Restatement (Second) of Torts § 580B (Am. Law Inst., Tentative Draft No. 21, 1975).

overcome only by actual malice, *i.e.*, "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Curtis Publ'g Co. v. Butts, 388 U.S. 130, 155 (1967); Gertz, 418 U.S. at 335.[3]

The existence of both common law and First Amendment conditional privilege is a question of law, and the defendant has the burden of proof with respect to establishing the privilege. See Piscatelli v. Van Smith, 424 Md. 294, 307, 35 A.3d 1140, 1147 (2012). If a conditional privilege is established, a plaintiff seeking to rebut the privilege must do so by demonstrating that the defendant made the alleged statement with malice, defined as "a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement." Id. at 307-08, 35 A.3d at 1148 (citations, brackets, and internal quotation marks omitted). The definition of malice—a person's

---

[3]A defendant may also assert an absolute privilege. In Gohari, 363 Md. at 55 n.13, 767 A.2d at 327 n.13, we explained:

An absolute privilege is one which provides complete immunity and applies,

> subject to limitations, principally to (1) judicial proceedings; (2) legislative proceedings; (3) in some cases to executive publications; (4) publications consented to; (5) publications between spouses; (6) publications required by law.

We explained that the difference between an absolute privilege and a qualified privilege is that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused.

(Citations and internal quotation marks omitted).

actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of the statement—does not cover the standard of proof necessary to overcome the conditional privilege. Case law demonstrates that the standard of proof that is required to overcome a First Amendment conditional privilege is clear and convincing evidence of knowledge of a statement's falsity or reckless disregard of whether the statement was false or not. See New York Times, 376 U.S. at 279-80. In this case, however, it is the standard of proof that an individual must satisfy to overcome a common law conditional privilege, *i.e.*, to establish malice, in a purely private defamation action that is at issue. For the reasons stated below, we hold that, in a purely private defamation action, an individual asserting a defamation claim must overcome a common law conditional privilege by a preponderance of the evidence.

## BACKGROUND

The facts giving rise to this purely private defamation action are as follows. Katherine Seley-Radtke ("Seley-Radtke"), Ph.D., Petitioner, and Ramachandra S. Hosmane, Ph.D. ("Hosmane"), Respondent, were colleagues in the Department of Chemistry at the University of Maryland, Baltimore County ("UMBC"). Hosmane was employed as a professor of chemistry at UMBC from 1982 until 2010, when he resigned following allegations of sexual assault of a graduate student. Based on allegations that Hosmane had sexually assaulted one of his graduate students, Brahmi Shukla ("Shukla"),[4] UMBC officials conducted an administrative investigation and determined that Hosmane

---

[4]In 2013, Shukla received her Ph.D. from UMBC.

- 4 -

had violated UMBC's sexual harassment policy. In addition to allegations of sexual assault, UMBC investigated whether an e-mail sent to Shukla regarding the sexual assault, which Shukla characterized as threatening, had been authored by Hosmane. The e-mail was sent from a person named "Nimmy Watson," a person unknown to Shukla; Shukla testified at trial that the contents of the Watson e-mail "scared" her.

According to Hosmane, on December 10, 2009, UMBC informed him of the results of the administrative investigation and provided him with three options: (1) submit to a two-year suspension without pay; (2) avail himself of the administrative appeal process; or (3) retire without the results of the investigation being made public. Hosmane selected the third option and resigned and retired, effective January 1, 2010. As a result, UMBC did not make public the findings of its investigation, nor was Hosmane sanctioned by UMBC.

The Office of the State's Attorney for Baltimore County, however, opened a criminal case against Hosmane stemming from the alleged sexual assault, and charged him with fourth-degree sex offense and second-degree assault in the District Court of Maryland sitting for Baltimore County, but subsequently nolle prossed the charges. Hosmane and Shukla entered into a settlement agreement ("the settlement agreement") concerning the sexual assault matter, in which Hosmane was to pay Shukla $10,000 and Shukla was to withdraw any civil and criminal claims against Hosmane related to the alleged sexual assault.

On December 10, 2010, Hosmane filed in the Circuit Court for Baltimore County ("the circuit court") a complaint against UMBC and other defendants related to his resignation from UMBC ("the UMBC case"). While the UMBC case was pending,

Hosmane submitted a Maryland Public Information Act ("public information") request seeking documents from UMBC. In August 2011, Hosmane received a number of documents from UMBC as a result of the public information request. As a result, on July 6, 2012, Hosmane filed in the circuit court a two-count complaint against Seley-Radtke seeking damages for defamation and false light invasion of privacy. In the complaint, Hosmane alleged "some of the numerous instances in which" Seley-Radtke had defamed him:

> a. In 2009, [Seley-Radtke] told the chemistry department chair, at least one co-worker, general counsel for UMBC, and others, that [Hosmane] had keys to many offices in the chemistry department, that he had stolen private documents regarding [Seley-Radtke] out of said offices, and that he had even sold some of the documents for money. None of these assertions are true.

> b. In February 2010, after [Hosmane]'s employment with UMBC had come to an end, [Seley-Radtke] wrote an email to the chemistry department chair and general counsel for UMBC in which she stated, among several defamatory statements, that [Hosmane] "is an unbalanced individual who has done some crazy and bizarre things, not to mention he's prone to sudden outbursts, and given the shootings in Alabama, I worry for my safety and for that of anyone around me . . . ."

> c. The same days she wrote the email referenced above, [Seley-Radtke] wrote another email to these same people and referred to [Hosmane] "stealing documents" and implied that [Hosmane] had falsely accused one of his students of trying to kill him. In this second email, [Seley-Radtke] also called [Hosmane] a "nutcase," and said that "it is not far-fetched that he could do something crazy at this point . . . ." These assertions are all demonstrably untrue.

> d. [Seley-Radtke] has additionally claimed in communicating with others that [Hosmane] was banned from campus following the end of his employment at UMBC and that he was also not allowed to meet with his former students. This is not true.

> e. [Seley-Radtke] has also claimed that [Hosmane], in speaking

with his students, would make comments to them about [Seley-Radtke]'s body parts, particularly her breasts and buttocks.  This is totally false.

f.     Moreover, [Seley-Radtke] has claimed that [Hosmane] tried to convince one of [Seley-Radtke]'s former post-doctorate students to file a formal complaint against [Seley-Radtke], even going so far as to offer the student a job if he would file the complaint.  Again, this is entirely untrue.

(Ellipses in original).

In her answer to the complaint, among other things, Seley-Radtke raised the affirmative defense of privilege, contending that "[a]ny statements made by [her] were privileged and confidential communications."

On April 4, 2013, Hosmane filed an amended complaint naming UMBC and the State as additional defendants in the Seley-Radtke case.  The circuit court subsequently consolidated the UMBC case and the Seley-Radtke case for the purpose of trial only.  On April 29, 2014, the circuit court granted the State's and UMBC's motion for summary judgment as to Hosmane's claims for defamation and invasion of privacy in the Seley-Radtke case on the basis of sovereign immunity.  The UMBC case and Hosmane's case against Seley-Radtke proceeded to a jury trial.

Prior to trial, Hosmane filed a motion in limine concerning several evidentiary matters; a few days later, Hosmane filed a supplemental motion in limine.  In relevant part, Hosmane sought to exclude documents and testimony concerning the settlement agreement between himself and Shukla, and to redact from two exhibits the following language from Seley-Radtke's e-mail: "Btw . . . I spoke to Det. John Taylor the other day and he mentioned that there are some potential new charges against [Hosmane], due to the

harassing emails.  Can't that keep him off campus?"[5]  (Ellipsis in original).  During trial, the circuit court denied the motion in limine as to those two matters.  As such, during trial, Shukla was permitted to testify about the settlement agreement, and Seley-Radtke's unredacted e-mails, containing the language that Hosmane sought to redact, were admitted into evidence.

At trial, due to a scheduling issue, Shukla was permitted testify first.  Shukla testified about the settlement agreement.  Specifically, during Shukla's direct examination, the following exchange occurred:

> [SELEY-RADTKE'S COUNSEL]: Now you also mentioned, a while back in your testimony, that there were criminal charges filed against [] Hosmane for the assault?  What happened with that criminal case?
>
> [HOSMANE'S COUNSEL]: Objection.
>
> THE COURT: Overruled.  You may answer the question.
>
> [SHUKLA]: It was dismissed.
>
> [SELEY-RADTKE'S COUNSEL]: And why was it dismissed to your knowledge?
>
> [HOSMANE'S COUNSEL]: Objection.
>
> THE COURT: Overruled.  You may answer the question.
>
> [SHUKLA]: Because there was a settlement of about $10,000 made, and therefore it was dismissed.
>
> [HOSMANE'S COUNSEL]: Objection.  Move to strike.
>
> THE COURT: Overruled.

---

[5]These two sentences appeared in one exhibit containing Seley-Radtke's original e-mail message and in a second exhibit in which the original e-mail message text appeared in a chain of three e-mails.

Before closing arguments, the circuit court reviewed proposed verdict sheets and jury instructions with the attorneys. Hosmane requested that the circuit court give a jury instruction on the republication or repetition of defamatory statements. The circuit court declined to give the instruction. The circuit court, however, gave an instruction concerning opinions as defamation.

During review of the proposed verdict sheets and jury instructions, Seley-Radtke contended that her statements regarding Hosmane were protected by a common interest conditional privilege.[6] The circuit court ruled, as a matter of law, that Seley-Radtke was entitled to a conditional privilege for the allegedly defamatory statements; Hosmane did not argue otherwise.

As to the standard for overcoming the conditional privilege, Hosmane requested that the circuit court give Maryland Civil Pattern Jury Instruction 12:12, which provides that, "[i]n order to recover, the plaintiff must prove by a preponderance of the evidence that the defendant made the statement with actual knowledge that the statement was false, coupled with the intent to deceive another person by means of the statement." MPJI-Cv 12:12 (4th ed., 2013 Supp.). On the other hand, Seley-Radtke argued that the pattern jury instruction should be "modified" to use language that the standard of proof is clear and convincing

---

[6]The common interest conditional privilege is a common law conditional privilege that a defendant may assert in a defamation action to avoid liability. See generally Marchesi, 283 Md. at 135, 387 A.2d at 1131. The common interest conditional privilege applies where a defendant demonstrates that he or she is a member of an identifiable group, and that the allegedly defamatory statements were made among members of the group in furtherance of a shared goal or common interest. See Gohari, 363 Md. at 57-58, 767 A.2d at 329.

evidence, not a preponderance of the evidence. The circuit court agreed with Seley-Radtke and determined that the applicable standard of proof to overcome the conditional privilege was clear and convincing evidence. The circuit court stated:

> [T]he cases that have been cited so far, and I've reviewed them . . . I have yet to find in any of the cases that have been cited in this court this morning and handed to the court, plus other cases I've read where there's a suggestion that the privilege is defeated by a preponderance of the evidence. I just haven't seen it. . . . So, . . . the instruction is gonna be by clear and convincing evidence.

The circuit court instructed the jury as follows: "In order to recover, the Plaintiff must prove by clear and convincing evidence that the Defendant made the statements with actual knowledge that the statement was false, coupled with the intent to deceive another person by means of the statement."

On May 9, 2014, the jury found in favor of Seley-Radtke. Hosmane noted a timely appeal to the Court of Special Appeals. On February 24, 2016, in a reported opinion, the Court of Special Appeals reversed the circuit court's judgment and remanded the case for a new trial. See Hosmane v. Seley-Radtke, 227 Md. App. 11, 16, 132 A.3d 348, 351 (2016). The Court of Special Appeals held that the circuit court "erred in instructing the jury that the [standard] of proof in overcoming the conditional privilege was clear and convincing evidence rather than by a preponderance of the evidence[.]" Id. at 16, 123 A.3d at 351. The Court of Special Appeals explained:

> Recognizing that malice means different things in different context, the Court [of Appeals has] adopted a "uniform standard" or definition of malice applicable to determining abuse of a conditional privilege and required the same to establish punitive damages. This did not change or elevate the burden of proof in common law defamation required to overcome the conditional privilege. No where [sic] did the Court of Appeals say that

plaintiffs in a common law defamation action, involving private individuals, not implicating the First Amendment, were entitled to higher protection and hence the higher burden of proof. . . . We hold that in common law tort defamation involving only private individuals, the burden of persuasion a plaintiff must satisfy to overcome the conditional privilege is preponderance of the evidence, while in First Amendment cases it is clear and convincing evidence.

Id. at 27-28, 132 A.3d at 358 (citations omitted). Thus, the Court of Special Appeals remanded the case to the circuit court for a new trial. Id. at 16, 123 A.3d at 351.

In its opinion, "[f]or the guidance of the [circuit] court on retrial," the Court of Special Appeals addressed two evidentiary issues raised by Hosmane. Id. at 16, 29, 123 A.3d at 351, 359. Specifically, the Court of Special Appeals addressed the circuit court's decision not to redact part of an e-mail written by Seley-Radtke that was admitted into evidence that referenced "potential new charges" and "harassing emails," and the circuit court's decision to admit Shukla's testimony concerning the settlement agreement. Id. at 29-31, 132 A.3d at 359-60. The Court of Special Appeals determined that the two sentences in Seley-Radtke's e-mail and Shukla's testimony about the settlement agreement were not relevant, were "highly prejudicial[,]" and could have led the jury to believe that Hosmane "was a sex abuser who paid money to resolve such a claim, that he was the subject of unrelated charges and was sending harassing emails." Id. at 32, 132 A.3d at 361.

Seley-Radtke filed a petition for a writ of *certiorari*, which this Court granted on May 20, 2016. Seley-Radtke v. Hosmane, 448 Md. 29, 136 A.3d 816 (2016).

## DISCUSSION

### I.

Put simply, Seley-Radtke contends that clear and convincing evidence is the proper

standard of proof to overcome a common law conditional privilege in a purely private defamation action. Specifically, Seley-Radtke argues that the malice required for overcoming a common law conditional privilege and the malice required for establishing punitive damages are, by definition, the same, and, therefore, the standard of proof necessary to prove both should be the same. Seley-Radtke asserts that adopting the clear and convincing evidence standard as the standard of proof necessary to overcome a common law conditional privilege promotes the State's policy of protecting free speech and furthers consistency in the law of defamation.

Hosmane responds that the application of the preponderance of the evidence standard to overcome a common law conditional privilege is consistent with well-established Maryland case law. Hosmane contends that the statements in this case that are subject to a common law conditional privilege are already sufficiently protected by the definition of malice, which requires a plaintiff to prove "that the defendant made his or her statement with malice, defined as a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of the statement." (Citation, internal quotation marks, and emphasis omitted). Hosmane argues that this definition of malice sufficiently protects privileged communications and that the standard of proof need not be clear and convincing evidence. Hosmane asserts that applying the clear and convincing evidence standard of proof would significantly narrow the distinction between purely private defamation actions and those implicating the First Amendment, thereby providing fewer protections to private individuals who have been defamed. Additionally, Hosmane maintains that adopting the clear and convincing evidence standard

would upend well-established case law and create confusion in Maryland defamation jurisprudence rather than provide clarity.

This Court reviews a trial court's giving of a jury instruction for abuse of discretion. See Keller v. Serio, 437 Md. 277, 283, 85 A.3d 283, 286 (2014). "In determining abuse of discretion in this context, we look to the following factors: (1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given." Id. at 283, 85 A.3d at 286 (citation and internal quotation marks omitted). Whether a jury instruction was a correct statement of the law is a question of law, which we review without deference. See, e.g., Griffin v. Lindsey, 444 Md. 278, 285, 119 A.3d 753, 757 (2015) ("We review questions of law without deference." (Citation omitted)). As this Court has observed, though, even in areas where a trial court has discretion, "no discretion is afforded to trial [court]s to act upon an erroneous conclusion of law." John Hopkins Hosp. v. Pepper, 346 Md. 679, 700, 697 A.2d 1358, 1368 (1997). Accordingly, although we determine whether a trial court's decision as to whether to give a particular jury instruction was an abuse of discretion, we review without deference the issue of whether the jury instruction was a correct statement of the law.

"A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt[,] or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." Gohari, 363 Md. at 54, 767 A.2d at 327 (citation and internal quotation marks omitted). Whether a statement is defamatory is a question of law. Piscatelli, 424 Md. at 306, 35 A.3d at 1147.

- 13 -

The United States Supreme Court ("the Supreme Court") and Maryland appellate courts have addressed a myriad of issues related to proof of defamation, First Amendment conditional privilege, and common law conditional privileges. In New York Times Co. v. Sullivan, 376 U.S. 254, 256, 279-80 (1964), the Supreme Court considered "the extent to which the constitutional protections for speech and press limit a State's power to award damages in a libel action brought by a public official[, in that case, an elected Commissioner of the City of Montgomery, Alabama,] against critics of his official conduct[,]" and held:

> The constitutional guarantees [of the First and Fourteenth Amendments] require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

In so holding, the Supreme Court noted that it "consider[ed] th[e] case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Id. at 270 (citations omitted). The Supreme Court explained that its holding was further supported by "[a]n oft-cited statement of a like rule," namely, the adoption by a number of courts of "a privilege for criticism of official conduct[.]" Id. at 280-82 (footnote omitted). According to the Supreme Court, "[s]uch a privilege for criticism of official conduct is appropriately analogous to the protection accorded a public official when he is sued for libel by a private citizen." Id. at 282 (footnote omitted). The Supreme Court noted that

decisions by other courts "all hold that all officials are protected unless actual malice can be proved" because, otherwise, "the threat of damage suits would [] inhibit the fearless, vigorous, and effective administration of policies of government[.]" Id. (citation and internal quotation marks omitted). The Supreme Court determined that "[a]nalogous considerations support the privilege for the citizen-critic of government" because "[i]t is as much his duty to criticize as it is the official's duty to administer." Id. (citation omitted). Accordingly, the Supreme Court "conclude[d] that such a privilege is required by the First and Fourteenth Amendments." Id. at 283.

A few years later, in Curtis, 388 U.S. at 134, the Supreme Court considered the impact of New York Times on "libel actions instituted by persons who are not public officials, but who are 'public figures' and involved in issues in which the public has a justified and important interest." In other words, the Supreme Court was tasked with deciding whether New York Times applied only in actions brought by public officials or whether the case had a broader application and could apply to public figures who were not public officials, such as a university athletic director and football coach or a private citizen who was a person "of some political prominence[,]" who were involved in matters of public interest. See Curtis, 388 U.S. at 134, 135-36, 140. Unsurprisingly, the publishers argued that New York Times should be extended to public figures, whereas the public figures urged otherwise. See Curtis, 388 U.S. at 146. The Supreme Court recognized the competing interests and stated "that an accommodation between them is necessary not only in these cases, but in all libel actions arising from a publication concerning public issues."

Id. at 147. The Supreme Court analyzed the distinctions between public officials and

public figures and ultimately held:

> These similarities and differences between libel actions involving persons who are public officials and libel actions involving those circumstanced as [public figures], viewed in light of the principles of liability which are of general applicability in our society, lead us to the conclusion that libel actions of the present kind [involving public figures] cannot be left entirely to state libel laws, unlimited by any overriding constitutional safeguard, but that the rigorous federal requirements of *New York Times* are not the only appropriate accommodation of the conflicting interests at stake. We consider and would hold that a 'public figure' who is not a public official may also recover damages for a defamatory falsehood whose substance makes substantial danger to reputation apparent, on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.

Curtis, 388 U.S. at 155 (citation omitted).

A few years later, in Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 30 (1971)

(plurality opinion), abrogated by Gertz, 418 U.S. 323, the Supreme Court yet again

considered the reach of New York Times. The plurality set forth the framework and

circumstances of the case as follows:

> *New York Times* held that in a civil libel action by a public official against a newspaper those [constitutional] guarantees [of freedom of speech and of the press] required clear and convincing proof that a defamatory falsehood alleged as libel was uttered with knowledge that it was false or with reckless disregard of whether it was false or not. The same requirement was later held to apply to public figures who sued in libel on the basis of alleged defamatory falsehoods. The several cases considered since *New York Times* involved actions of public officials or public figures, usually, but not always, against newspapers or magazines. Common to all the cases was a defamatory falsehood in the report of an event of public or general interest. The instant case presents the question whether the New York Times'[s] knowing-or-reckless-falsity standard applies in a state civil libel action brought not by a public official or a public figure but by a private individual for a defamatory

- 16 -

falsehood uttered in a news broadcast by a radio station about the individual's involvement in an event of public or general interest.

Rosenbloom, 403 U.S. at 30-32 (plurality opinion) (citations, footnotes, and internal quotation marks omitted). As to that issue, the Supreme Court held that the New York Times definition of malice applied, thus further extending the applicability of New York Times. See Rosenbloom, 403 U.S. at 32 (plurality opinion). Specifically, the Supreme Court held:

> [A] libel action . . . by a private individual against a licensed radio station for a defamatory falsehood in a newscast relating to his involvement in an event of public or general concern may be sustained only upon clear and convincing proof that the defamatory falsehood was published with knowledge that it was false or with reckless disregard of whether it was false or not.

Id. at 52 (footnote omitted).

In 1974, in the seminal case of Gertz, 418 U.S. at 346-47, the Supreme Court abrogated Rosenbloom and held that, "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." (Footnote omitted). In other words, the Supreme Court rejected its holding in Rosenbloom that the New York Times malice definition extended automatically to private individuals who had been defamed where the statement was related to a matter of public or general concern. See Gertz, 418 U.S. at 346. According to the Supreme Court, in Gertz, its holding "provide[d] a more equitable boundary between the competing concerns involved[,]" recognizing "the strength of the legitimate [S]tate interest in compensating private individuals for wrongful injury to reputation, yet shield[ing] the press and broadcast media from the rigors of strict

- 17 -

liability for defamation." Id. at 347-48. Indeed, as the Supreme Court recognized, its "accommodation of the competing values at stake in defamation suits by private individuals allows the States to impose liability on the publisher or broadcaster of defamatory falsehood on a less demanding showing than that required by *New York Times*." Gertz, 418 U.S. at 348.

Underpinning its holding was the Supreme Court's acknowledgment that private individuals are distinguishable from public officials and public figures for purposes of defamation actions. See id. at 344. Specifically, the Supreme Court observed that "[p]ublic officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." Id. (footnote omitted). As such, private individuals are "more vulnerable to injury, and the [S]tate interest in protecting them is correspondingly greater." Id. Moreover, the Supreme Court observed that public officials, unlike private individuals, have chosen to place themselves in the public realm. See id. at 344. Individuals who run for office "must accept certain necessary consequences of [] involvement in public affairs[,]" such as "closer public scrutiny" of the public official's discharge of his or her official duties and the public official's fitness for office. Id. at 344-45.

The Supreme Court stated that public figures stand in a similar position to public officials, usually having assumed prominent roles in society by "thrust[ing] themselves to the forefront of particular public controversies[,]" thus "invit[ing] attention and comment." Id. at 345. According to the Supreme Court, as a consequence of their positions as public

officials and public figures, "the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them. No such assumption is justified with respect to a private individual." Id. Indeed, a private individual "has relinquished no part of his interest in the protection of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood." Id. Thus, according to the Supreme Court "private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery." Id.

Given the distinction between public officials and public figures on the one hand and private individuals on the other hand, the Supreme Court concluded that the States should control legal remedies for private individuals who are defamed. See id. at 345-46. Indeed, in the Supreme Court's view, "[t]he extension of the *New York Times* test proposed by the *Rosenbloom* plurality would abridge this legitimate [S]tate interest to a degree that [it] f[ou]nd unacceptable" and would, instead, bog the courts down with trying to determine "which publications address issues of 'general or public interest' and which do not[.]" Gertz, 418 U.S. at 346. According to the Supreme Court, the "public or general interest" test set forth in Rosenbloom for determining whether the New York Times malice definition applied failed to serve the competing interests presented when a private individual is defamed. Gertz, 418 U.S. at 346.

Following Gertz, in a series of cases, "this Court substantially changed the Maryland common law regarding defamation actions even in areas where the changes were not

- 19 -

mandated by the First Amendment and Article 40 of the Maryland Declaration of Rights."
Telnikoff v. Matusevitch, 347 Md. 561, 593, 702 A.2d 230, 246 (1997) (citations and footnote omitted). In Jacron, 276 Md. at 581-82, 350 A.2d at 689, we considered "the extent to which the First and Fourteenth Amendments to the Federal Constitution are applicable to actions for defamation by private individuals against defendants who are not publishers or broadcasters[,]" and, alternatively, whether, as a matter of Maryland law, "the law of defamation should be changed" in light of Gertz. We held that the principles announced in Gertz apply to defamation cases involving non-media defendants—i.e., defendants who are not publishers and broadcasters—and that the standard of proof of fault "in cases of purely private defamation must meet the standard of the preponderance of the evidence." See Jacron, 276 Md. at 594, 597, 350 A.2d at 696, 698. In Jacron, id. at 582, 350 A.2d at 689, an employee brought an action for slander against his former employer; in other words, the plaintiff was a private individual and the defendant was a private entity, not a publisher or broadcaster. The trial court ultimately directed a verdict for the former employer, ruling that the former employer was protected by a common law conditional privilege that had not been overcome because the employee had failed to show actual malice. See id. at 583-84, 350 A.2d at 690. The Court of Special Appeals reversed, holding that the employee "had presented sufficient evidence of malice to warrant submission of the question of abuse of the common law conditional privilege to the jury[.]" Id. at 584, 350 A.2d at 690. The Court of Special Appeals also concluded that, because the defamatory statements were "purely private" in nature, the "case was beyond the reach of Gertz[,]" and that Gertz applied only where a private person was defamed in connection

- 20 -

with a matter of public or general interest.  Jacron, 276 Md. at 584, 588, 350 A.2d at 690, 693.

This Court concluded that the case involved "defamation of a private individual as to a purely private matter[.]"  Id. at 584, 350 A.2d at 690-91.  However, this Court disagreed with the Court of Special Appeals that Gertz did not apply to purely private defamation actions.  See Jacron, 276 Md. at 588, 350 A.2d at 693.  We recognized that "[t]he very essence of the *Gertz* decision . . . was the shift in focus from the protection of free expression, which undergirded *New York Times* and its progeny . . .  to the [S]tate interest in protecting private persons who have been defamed."  Jacron, 276 Md. at 589, 350 A.2d at 693.  We determined that Gertz applies to "actions brought by private persons regardless of whether the subject matter of the defamation is one of public or general interest."  Jacron, 276 Md. at 590, 350 A.2d at 694.

This Court next concluded that Gertz itself extended to media defendants only, *i.e.*, publishers and broadcasters, and did not extend to non-media defendants, such as the former employer, a private entity.  See Jacron, 276 Md. at 590, 350 A.2d at 694.  Nonetheless, after reviewing as analogous the application of New York Times in both media and non-media cases, this Court held "as a matter of [S]tate law that the *Gertz* holding should apply to media and non-media defendants alike, and to both libel and slander."  Jacron, 276 Md. at 592, 350 A.2d at 695.  We explained that our holding was driven by "the compelling need for consistency and simplicity in the law of defamation."  Id. at 593, 350 A.2d at 696.  Thus, we held that the principles articulated in Gertz apply broadly in defamation actions, to both media and non-media defendants in actions for libel

and slander.  See Jacron, 276 Md. at 594, 350 A.2d at 696.

Notably, in Jacron, id. at 596, 350 A.2d at 697, as to cases of purely private defamation, we adopted the Restatement (Second) of Torts § 580B (Am. Law Inst. 1977), and specifically held that a standard of negligence must be applied in cases of purely private defamation.  The Restatement (Second) of Torts § 580B (Am. Law Inst. 1977) provides:

> 580B. DEFAMATION OF PRIVATE PERSON.
>
> ONE WHO PUBLISHES A FALSE AND DEFAMATORY COMMUNICATION CONCERNING A PRIVATE PERSON, OR CONCERNING A PUBLIC OFFICIAL OR PUBLIC FIGURE IN RELATION TO A PURELY PRIVATE MATTER NOT AFFECTING HIS CONDUCT, FITNESS OR ROLE IN HIS PUBLIC CAPACITY, IS SUBJECT TO LIABILITY, IF, BUT ONLY IF, HE
>
> (a) KNOWS THAT THE STATEMENT IS FALSE AND THAT IT DEFAMES THE OTHER,
>
> (b) ACTS IN RECKLESS DISREGARD OF THESE MATTERS, OR
>
> (c) ACTS NEGLIGENTLY IN FAILING TO ASCERTAIN THEM.

Jacron, 276 Md. at 596-97, 350 A.2d at 697-98.  We also clarified that the plaintiff bears the burden of proving the falsity of an allegedly defamatory statement.  See id. at 597, 350 A.2d at 698.  In other words, the defendant was no longer required to establish the truth of the statement as an affirmative defense, but rather the plaintiff was required to establish the falsity of the statement.  See id. at 597, 350 A.2d at 698.  In establishing fault, this Court expressly determined that, in proving a defamation claim, a plaintiff must meet the preponderance of the evidence standard, rather than the clear and convincing evidence standard.  See id. at 597, 350 A.2d at 698.  We specifically explained that we addressed the standard of proof issue "to dispel any possible notion that the plaintiff must prove

negligence by 'clear and convincing' evidence." Id. at 597, 350 A.2d at 698.

As to common law conditional privileges, we noted that, in Stevenson v. Balt. Baseball Club, Inc., 250 Md. 482, 486-87, 243 A.2d 533, 536 (1968) (which was later overruled in Marchesi, 283 Md. 131, 387 A.2d 1129), we explained that we had adopted the following definition of malice:

> The privilege may be lost, however, if the plaintiff in a defamation case can show malice, which in this context means not hatred or spite but rather a reckless disregard of truth, the use of unnecessarily abusive language, or other circumstances which would support a conclusion that the defendant acted in an ill-tempered manner or was motivated by ill-will.

Jacron, 276 Md. at 599-600, 350 A.2d at 699. In Jacron, id. at 600, 350 A.2d at 699-700, we observed that Maryland law did not recognize negligence as a legitimate ground upon which to defeat a common law conditional privilege, and, thus, we retained the Stevenson definition of malice, *i.e.*, "the reckless disregard standard[,]" as applied to common law conditional privileges, explaining:

> We repeated the *Stevenson* definition [in another case], and thus the reckless disregard standard now appears to be firmly established in Maryland as a test, albeit not the exclusive test, for abuse of a conditional privilege. This being a higher standard than negligence, we retain the common law conditional privilege in Maryland which, in a given case, may suffice to avoid liability even though the *Gertz* standard regarding falsity and defamation is met by the plaintiff. It should be noted, however, that in a case where a common law conditional privilege is found to exist, the negligence standard of *Gertz* is logically subsumed in the higher standard for proving malice, reckless disregard as to truth or falsity, and therefore becomes irrelevant to the trial of the case. Were the plaintiff who is confronted with a conditional privilege incapable of proving the malice necessary to overcome that hurdle, it would be of no consequence that he might have met the lesser standard of negligence.

(Footnote omitted). Thus, this Court held:

- 23 -

Unless a conditional privilege is found to have existed, the plaintiff shall be required at the new trial of this case to establish the liability of the defendant through proof of negligence by the preponderance of the evidence, and may recover compensation for actual injury, . . . but neither presumed nor punitive damages, unless he establishes liability under the more demanding *New York Times* [malice definition] of knowing falsity or reckless disregard for the truth. Should the court determine that a common law conditional privilege existed, the question of its forfeiture vel non shall be governed by the views expressed herein.

Id. at 601, 350 A.2d at 700.

As to privileges in defamation cases, in Smith v. Danielczyk, 400 Md. 98, 117, 928 A.2d 795, 806 (2007), we explained that "[a]n absolute privilege is distinguished from a qualified privilege in that the former provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the latter is conditioned upon the absence of malice and is forfeited if it is abused." (Citation and internal quotation marks omitted). By contrast, "[t]he common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest." Marchesi, 283 Md. at 135, 387 A.2d at 1131 (citations omitted). This Court has identified four common law conditional privileges:

(1) The public interest privilege, to publish materials to public officials on matters within their public responsibility; (2) the privilege to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others; (3) the fair comment privilege; and (4) the privilege to make a fair and accurate report of public proceedings.

Gohari, 363 Md. at 57, 767 A.2d at 329. As to application of the common interest conditional privilege—the privilege asserted by Seley-Radtke in this case—this Court has

- 24 -

explained that "a common interest may include interests in property, business and professional dealings, and can inhere in business dealings between the publisher and the recipient." Id. at 58, 767 A.2d at 329 (citations and internal quotation marks omitted). And, we have provided the following guidance as to application of the common interest conditional privilege:

> Common interests are usually found among members of identifiable groups in which members share similar goals or values or cooperate in a single endeavor. . . . The idea is to promote free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit. . . . The privilege does not arise in the first place unless the communication relates in some degree to the common interest, and once the privilege arises it is lost if it is abused by malice or excessive publication.

Id. at 58, 767 A.2d at 329 (citation omitted) (ellipses in original).

If a trial court determines that a common law conditional privilege exists, a plaintiff seeking to defeat the privilege must prove that the defendant abused the privilege by making the statements "with malice, defined as a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement." Piscatelli, 424 Md. at 307-08, 35 A.3d at 1147-48 (citation, brackets, and internal quotation marks omitted). In assessing whether a party's statements were made with malice, a trial court considers all relevant factors, "including the defendant's reasonable belief in the truth of his statements, the excessive nature of the language used, whether the disclosures were unsolicited, and whether the communication was made in a proper manner and only to proper parties." Id. at 308, 35 A.3d at 1148 (citation and internal quotation marks omitted).

- 25 -

The definition of "malice" as applied to defamation cases has evolved since Gertz. As discussed above, in Stevenson, 250 Md. at 486-87, 243 A.2d at 536, this Court stated that the malice required to overcome a claim of common law conditional privilege is "not hatred or spite but rather a reckless disregard of truth, the use of unnecessarily abusive language, or other circumstances which would support a conclusion that the defendant acted in an ill-tempered manner or was motivated by ill-will." This definition of malice differed, however, from the New York Times, 376 U.S. at 280, definition of malice, which applied when a plaintiff sought presumed or punitive damages: a statement made "with knowledge that it was false or with reckless disregard of whether it was false or not." Over time, these differing, incompatible definitions of malice resulted in confusion for juries, leading this Court to adopt a single definition for malice in defamation cases—the New York Times definition of malice. See Marchesi, 283 Md. at 138, 387 A.2d at 1133. In Marchesi, id. at 138-39, 387 A.2d at 1133, this Court explained its rationale for abandoning the definition articulated in Stevenson, 250 Md. 482, 243 A.2d 533, as follows:

> If, as we suspect is frequently the case, juries encounter difficulty in applying even a single standard of malice, where only one is applicable, then they cannot help but find the task of coping with two disparate forms vastly more complicated. The solution to this dilemma, we think, lies in the adoption of the *New York Times* standard of malice to defeat the conditional privilege defense in cases of private defamation, thus resulting in a uniform definition of malice to be applied for all purposes where defamatory conduct is charged.

As such, this Court adopted the New York Times standard, requiring evidence of the defendant's "knowledge of falsity or reckless disregard for truth" for overcoming a conditional privilege "in cases of private defamation." Marchesi, 283 Md. at 139, 387 A.2d at 1133. In Jacron, 276 Md. at 600, 350 A.2d at 699-700, this Court explained "that in a

- 26 -

case where a common law conditional privilege is found to exist, the negligence standard of *Gertz* is logically subsumed in the higher standard for proving malice, reckless disregard as to truth or falsity,[7] and therefore becomes irrelevant to the trial of the case." Indeed, as we explained, if a plaintiff "confronted with a conditional privilege [is] incapable of proving the malice necessary to overcome that hurdle, it would be of no consequence that he might have met the lesser standard of negligence." Jacron, 276 Md. at 600, 350 A.2d at 700.

In Le Marc's Mgmt. Corp. v. Valentin, 349 Md. 645, 646, 653, 709 A.2d 1222, 1223, 1226 (1998), this Court further refined the definition of "malice" by re-examining the definition of malice as applied to defamation actions in which the plaintiff seeks punitive damages. We held that, in light of relevant recent decisions on the issue of punitive damages, such damages are allowable in defamation cases "only when the plaintiff establishes that the defendant had actual knowledge that the defamatory statement was false" and that "punitive damages may only be awarded if the plaintiff proves, by clear and convincing evidence, that the defendant had the requisite mens rea, *i.e.*, actual knowledge[.]" Id. at 653, 709 A.2d at 1226 (footnote omitted). In so holding, this Court abandoned the "reckless disregard" prong of the malice definition and adopted the definition articulated in Ellerin v. Fairfax Savings, F.S.B., 337 Md. 216, 229, 652 A.2d

---

[7]As explained below, after Piscatelli, 424 Md. at 307-08, 35 A.3d at 1148, the standard for proving malice is no longer "reckless disregard as to the truth or falsity[,]" but rather "a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement." (Citation, brackets, and internal quotation marks omitted).

1117, 1123 (1995). See Le Marc's, 349 Md. at 653, 709 A.2d at 1126-27. In Ellerin, 337 Md. at 234, 652 A.2d at 1126, we held that, to recover punitive damages in an action for fraud, a plaintiff must show actual malice, defined as "the defendant's actual knowledge of falsity, coupled with [the defendant's] intent to deceive the plaintiff by means of the false statement[.]" And, in Ellerin, id. at 235, 652 A.2d at 1126, we explained that "'reckless disregard' or 'reckless indifference' concerning the truth of the representation falls short of the mens rea which is required to support an award of punitive damages."

Consequently, in Piscatelli, 424 Md. at 307-08, 35 A.3d at 1148, this Court likewise adopted the Ellerin malice definition for cases in which the plaintiff must prove malice to overcome a common law conditional privilege. Thus, for the purpose of defamation actions, malice is defined as "a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement." Piscatelli, 424 Md. at 307-08, 35 A.3d at 1148 (citations, brackets, and internal quotation marks omitted).

Although this Court has identified the applicable standard of proof in a purely private defamation action to be the negligence standard, *i.e.*, the preponderance of the evidence, we have not directly addressed whether a plaintiff must meet a higher standard of proof when seeking to defeat a common law conditional privilege. In Hanrahan v. Kelly, 269 Md. 21, 31, 305 A.2d 151, 157 (1973), which was decided prior to Gertz, this Court examined the jury instructions given by a trial court in a defamation action where the defendant asserted a common law conditional privilege. The jury instructions contained the following instruction:

> If you find from all of the evidence in the case that the letter in question was privileged under the standards I have hereinbefore set forth, and **if you further find that the plaintiff has not persuaded you by a fair preponderance of affirmative evidence that there was actual or express malice on behalf of the defendant in writing said letter, then your verdict should be in favor of the defendant.**

Hanrahan, 269 Md. at 30, 305 A.2d at 157 (emphasis added). This Court upheld the giving of the jury instructions. See id. at 32, 305 A.2d at 158. The standard of proof for overcoming the common law conditional privilege was not, however, an issue that the parties raised in that case; instead, the plaintiff contested the jury instructions on the ground that the jury was instructed to consider evidence that was, in the plaintiff's view, irrelevant. See id. at 31, 305 A.2d at 157. Thus, we did not directly address the proper standard of proof for overcoming a common law conditional privilege.

In Globe Sec. Sys. Co. v. Sterling, 79 Md. App. 303, 311, 556 A.2d 731, 735 (1989), the Court of Special Appeals specifically examined the proper standard of proof required to overcome a claim of privilege, and, specifically, "whether the trial court erred in refusing to instruct the jury that a conditional privilege may be overcome only by clear and convincing evidence of malice." In that case, the jury was instructed that the plaintiff "met her burden if she established abuse of the privilege by a preponderance of the evidence." Id. at 311, 556 A.2d at 735. The defendants, however, claimed that the proper standard of proof was clear and convincing evidence. See id. at 311, 556 A.2d at 735. The Court of Special Appeals disagreed and held that preponderance of the evidence was, indeed, the proper standard for establishing malice. See id. at 311, 556 A.2d at 735-36. Relying on the principles set forth in Gertz, the Court of Special Appeals explained that requiring a

higher standard of proof would limit the State's interest in protecting the ability of private individuals to seek a remedy for defamation:

> The type of malice required for both private person and public person defamation actions is knowledge of falsity or reckless disregard for the truth. Hence, if the type of malice is the same, then the only avenue open to protect private persons in accordance with *Gertz* is to lower the quantum of proof[.]

Globe Sec. Sys., 79 Md. App. at 311, 556 A.2d at 735-36 (citations omitted); see also Shapiro v. Massengill, 105 Md. App. 743, 777 n.11, 661 A.2d 202, 219 n.11 (1995) ("We note that the [standard] of proof necessary for a plaintiff to establish a claim of constitutional malice in the case-in-chief (*i.e.,* clear and convincing evidence) is greater than the degree of proof necessary to establish constitutional malice in order to overcome the affirmative defense of conditional privilege.").

Other jurisdictions have not reached a consensus regarding the standard of proof required to overcome a common law conditional privilege. We are aware of eight jurisdictions that explicitly require the plaintiff to establish abuse of a common law conditional privilege by clear and convincing evidence. See Advanced Cardiac Specialists, Chartered. v. Tri-City Cardiology Consultants, P.C., 214 P.3d 1024, 1028-29 (Ariz. Ct. App. 2009) ("To avoid summary judgment pursuant to the qualified privilege that protects [certain] reports, plaintiffs must produce clear and convincing evidence that [the defendant] abused his privilege." (Citations omitted)); Myers v. Levy, 808 N.E.2d 1139, 1148 (Ill. App. Ct. 2004) ("The plaintiff need prove the common-law elements of defamation only by a preponderance of the evidence, but when the defendant establishes the existence of a qualified privilege, the plaintiff must prove by clear and convincing evidence that the

defendant acted with actual malice." (Citation omitted)); Erickson v. Marsh & McLennan Co., Inc., 569 A.2d 793, 806 (N.J. 1990) ("We have also declared that proof of malice in the context of a qualified privilege must be established by clear and convincing evidence." (Citations omitted)); Jacobs v. Frank, 573 N.E.2d 609, 614 (Ohio 1991) ("[W]hen a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice."); Scott v. Poindexter, 53 S.W.3d 28, 33 (Tex. Ct. App. 2001) ("The plaintiff must offer clear and convincing affirmative proof of actual malice to support a recovery [for defamation when the defendant has asserted a qualified privilege]."); Crump v. P & C Food Markets, Inc., 576 A.2d 441, 447 (Vt. 1990) ("The jury was properly instructed that [the] plaintiff had to prove malice to defeat the privilege by clear and convincing evidence."); Gov't Micro Res., Inc. v. Jackson, 624 S.E.2d 63, 71 (Va. 2006) ("[W]e held that the trial court erred in instructing the jury that a qualified privilege could be overcome if actual malice was established by a preponderance of the evidence." (Citing Great Coastal Express, Inc. v. Ellington, 334 S.E.2d 846, 854 (Va. 1985), overruled on other grounds by Cashion v. Smith, 749 S.E.2d 526 (Va. 2013))); Moe v. Wise, 989 P.2d 1148, 1157 (Wash. Ct. App. 1999) ("[O]nce the defendant establishes a qualified privilege, to prove the abuse of that privilege even a private figure plaintiff must satisfy the higher clear and convincing standard otherwise applied only to public figure plaintiffs.").

Jurisdictions vary as to the rationale for requiring a higher standard of proof to overcome a common law conditional privilege in a defamation case. For instance, in Moe,

989 P.2d at 1157, the Court of Appeals of Washington explained that "[t]he higher [burden] of proof necessary to overcome a qualified privilege stems from the public policy bases supporting privileges." Similarly, in Erickson, 569 A.2d at 806, the Supreme Court of New Jersey held that the applicable standard for defeating a common law conditional privilege was clear and convincing evidence, noting that "the imposition of a lesser [standard] of proof would fail to adequately protect the interests underlying the privilege." Alternatively, in Great Coastal Express, 334 S.E.2d at 854, the Supreme Court of Virginia adopted the higher standard of proof to avoid confusing juries tasked with applying differing standards for malice in a defamation action:[8]

> We agree that the burden of proving malice for the purpose of defeating a qualified privilege is by clear and convincing evidence, and that the quoted instruction was erroneous in setting the burden at a preponderance. It is important, we think, that juries not be confused in these cases by two different burdens of proof of malice, one pertaining to the defeat of a qualified privilege, the other pertaining to punitive damages.

(Footnote omitted).

On the other hand, we are aware of ten jurisdictions that explicitly apply the preponderance of the evidence standard to a plaintiff's attempt to defeat a common law conditional privilege. See Manguso v. Oceanside Unified Sch. Dist., 153 Cal. App. 3d

---

[8]Interestingly, the Supreme Court of Virginia did not conclude that juries would be confused by the "two species of malice[,]" *i.e.* common law malice and the New York Times malice definition, which, under Virginia law, include different elements. Great Coastal Express, 334 S.E.2d at 854. Noting that the elements of the New York Times malice definition are subsumed within the elements of Virginia common law malice, the Supreme Court of Virginia determined that the disjunctive manner in which the elements are presented to the jury would resolve such confusion. Great Coastal Express, 334 S.E.2d at 854.

574, 580 (1984) ("[E]ven if [a letter] is defamatory, it was not libelous unless [the plaintiff] shows by a preponderance of the evidence [the defendant] acted with malice[.]" (Footnote omitted)); Miles v. Perry, 529 A.2d 199, 204 (Conn. App. 1987) ("[I]f the plaintiff is a public figure, she is required to prove actual malice by clear and convincing evidence. If the plaintiff is a private individual, on the other hand, she is required to prove actual malice, in order to rebut the defense of privilege and recover general damages, merely by a preponderance of the evidence." (Citations omitted)); DelMonico v. Traynor, 116 So. 3d 1205, 1215 (Fla. 2013) ("To overcome a qualified privilege, . . . a plaintiff must 'establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice[.]'" (Citation omitted)); Sanders v. Stewart, 298 N.E.2d 509, 513 (Ind. Ct. App. 1973) ("The fact that words otherwise actionable are spoken under [] circumstances [of qualified privilege] rebuts the inference of malice which would otherwise arise as a matter of law from the speaking of the words. The plaintiff must then establish express malice by a preponderance of the evidence or fail in his action."); Lester v. Powers, 596 A.2d 65, 70 (Me. 1991) ("We do not require clear and convincing evidence, however, to overcome a conditional privilege that arises at common law and not from the First Amendment." (Citation and footnote omitted)); Pope v. Motel 6, 114 P.3d 277, 283-84 (Nev. 2005) ("Under a qualified privilege, the plaintiff must prove by a preponderance of the evidence that the defendant abused the privilege by publishing the defamatory communication with actual malice." (Footnote omitted)); Mancuso v. Allergy Assocs. of Rochester, 895 N.Y.S.2d 756, 758 (N.Y. App. Div. 2010) ("Where, as here, a plaintiff is a private individual and the allegedly defamatory statements are not a matter of legitimate

public concern, the more stringent First Amendment protections associated with public officials or affairs are not implicated[.]" (Citations omitted)); Tubra v. Cooke, 225 P.3d 862, 867 n.3 (Or. App. 2010) ("'If you find that the plaintiff has proved by a preponderance of the evidence that defendants[ ] abuse[d the] privilege . . . then the defendants are not entitled to the qualified privilege defense.'" (Alterations in original)); Rutt v. Bethlehems' Globe Publ'g Co., 484 A.2d 72, 83 (Pa. Super. 1984) ("Consistency, as well as prudence, compels the view that the appropriate standard of proof, in defamation actions where the plaintiff is, as heretofore determined, a private figure, should be one of negligence.");[9] Calero v. Del Chemical Corp., 228 N.W.2d 737, 748 (Wis. 1975) ("[When refuting a conditional privilege not predicated on First Amendment principles,] express malice must be shown by the preponderance of the evidence.").

In requiring proof by a preponderance of the evidence to overcome a common law conditional privilege, several courts have relied on the distinction between a privilege implicated by the First Amendment and a common law conditional privilege. For example, in Lester, 596 A.2d at 69-70, the Supreme Judicial Court of Maine explained the distinction

_____

[9]It should be noted that, unlike Maryland, Pennsylvania has adopted a negligence standard that applies to conditional privileges, as well as private-individual defamation actions:

> [U]nder Pennsylvania law, once the issue of conditional privilege is raised by a defendant who has been sued by a private figure for defamatory communications concerning matters which are *not* of public concern, the burden of proof of the plaintiff in order to establish abuse of the conditional privilege is "want of reasonable care and diligence to ascertain the truth" or more simply put, negligence.

Rutt, 484 A.2d at 83 (emphasis in original) (citations omitted).

as follows:

> Discussion of public officials and public figures on matters of public concern, the U.S. Supreme Court has declared, deserves special favor in a democratic society, and thus such discussion is subject to a conditional privilege—the "First Amendment privilege"—that can be overcome only by clear and convincing evidence of knowledge or disregard of falsity. We do not require clear and convincing evidence, however, to overcome a conditional privilege that arises at common law and not from the First Amendment.

(Citations and footnote omitted). Similarly, the Appellate Division of the Supreme Court of New York, Fourth Department, has concluded:

> Where . . . a plaintiff is a private individual and the allegedly defamatory statements are not a matter of legitimate public concern, the more stringent First Amendment protections associated with public officials or affairs are not implicated. Thus, the clear and convincing standard does not apply herein but, rather, the preponderance of the evidence standard applies[.]

Mancuso, 895 N.Y.S.2d at 758 (citations omitted). The Supreme Court of Wisconsin has made a similar distinction:

> In the instant case, we are not dealing with a conditional privilege based on First Amendment principles but rather with one based on a public policy favoring the encouragement of a free interchange of information under certain circumstances. The circumstances are the inquiry by a prospective employer of a former employer. In such a case, one must prove only 'express malice' which is a defamatory statement motivated by ill-will, spite, envy, revenge, or other bad or corrupt motive. And such express malice must be shown by the preponderance of the evidence.

Calero, 228 N.W.2d at 748 (citation omitted).

Turning to the present case, we hold that the standard of proof required to overcome a common law conditional privilege in a purely private defamation action is preponderance of the evidence. Considering the evolution of the Maryland common law on this matter, we observe that this Court has consistently sought to balance the protection of the free flow

- 35 -

of information with the State's interest in providing a remedy for individuals who have been victims of defamation. See Marchesi, 283 Md. at 135, 387 A.2d at 1131. We conclude that the important State interest of protecting private individuals from defamation is best served by allowing a plaintiff to defeat a common law conditional privilege by a preponderance of the evidence. Indeed, requiring plaintiffs to overcome a common law conditional privilege by clear and convincing evidence would run counter to this Court's jurisprudence since Jacron, 276 Md. 580, 350 A.2d 688.

This conclusion is supported by the trajectory of both the Supreme Court's and Maryland's defamation jurisprudence since New York Times. As discussed above, the Supreme Court's refusal in Gertz, 418 U.S. at 348, to apply the New York Times definition of malice to defamation claims involving private plaintiffs was premised on "the strength of the legitimate [S]tate interest in compensating private individuals for wrongful injury to reputation[.]" Following Gertz, this Court took the significant step of adopting a negligence standard for defamation cases involving purely private actions, requiring the New York Times malice definition to be satisfied only for claims seeking punitive and presumed damages. See Jacron, 276 Md. at 596-601, 350 A.2d at 697-700. Since Jacron, we have consistently recognized that private individuals are more vulnerable than public officials and public figures, and, as such, require greater protection.

Put succinctly, Gertz transformed the law of defamation. Seley-Radtke, however, would have this Court overlook the foundational principles of Gertz and impose a greater requirement for private individuals asserting a defamation claim than that which is set forth in the case law. Indeed, Seley-Radtke reads into Jacron a requirement that plaintiffs

seeking to overcome a common law privilege must prove malice by clear and convincing evidence. Specifically, Seley-Radtke relies on a portion of our opinion in Jacron, 276 Md. at 600, 350 A.2d at 700, that states:

> [I]n a case where a common law conditional privilege is found to exist, the negligence standard of *Gertz* is logically subsumed in the higher standard for proving malice, reckless disregard as to truth or falsity, and therefore becomes irrelevant to the trial of the case.

We disagree with Seley-Radtke's interpretation of Jacron.[10]

As previously discussed, following New York Times and Gertz, this Court undertook the lengthy and meticulous task of defining malice as it applies to defamation cases. See Marchesi, 283 Md. at 138, 387 A.2d at 1133; Le Marc's, 349 Md. at 653, 709 A.2d at 1226; Piscatelli, 424 Md. at 307-08, 35 A.3d at 1148. Regardless of the applicable standard of proof, a plaintiff seeking to defeat a common law conditional privilege must prove that the defendant had "actual knowledge that his [or her] statement [was] false, coupled with his [or her] intent to deceive another by means of that statement[,]" *i.e.*, that the defendant acted with malice. Piscatelli, 424 Md. at 307-08, 35 A.3d at 1148 (some

---

[10]Seley-Radtke also directs our attention to a footnote in Chesapeake Publ'g Corp. v. Williams, 339 Md. 285, 296 n.4, 661 A.2d 1169, 1175 n.4 (1995), in which this Court stated that the actual malice standard necessary to overcome a common law conditional privilege was "the same standard as is required to prove defamation of a public figure, knowledge of falsity or reckless disregard for the truth." We observe that a streamlining of the malice standard does not automatically equate with an adoption of the clear and convincing evidence standard of proof. Furthermore, the plaintiff in Chesapeake Publ'g Corp., id. at 293, 661 A.2d at 1173, was a public figure; thus, this Court's requirement that the plaintiff prove malice by clear and convincing evidence was proper and distinguishable from the present case.

alterations in original) (citation omitted). Our decision in <u>Jacron</u> does not set forth a higher standard of proof necessary to overcome a common law conditional privilege, but rather explains the applicable definition of malice utilized to rebut a common law conditional privilege.

Seley-Radtke argues that this Court's reconciliation of the differing definitions of malice in <u>Jacron</u> is evidence of an intention to similarly streamline the burdens of proof. We disagree. Again, such an outcome would undermine the case law developed by this Court post-<u>Gertz</u>. Indeed, requiring a plaintiff to prove malice necessary to rebut a common law conditional privilege by clear and convincing evidence—which, as we described in <u>Piscatelli</u>, 424 Md. 307-08, 35 A.3d at 1148, requires actual knowledge of a statement's falsity as opposed to reckless disregard for the truth—would certainly interfere with the State's well-established interest in providing a remedy for private individuals who have been victims of defamation. As the Court of Special Appeals incisively observed in <u>Globe Sec. Sys.</u>, 79 Md. App. at 311, 556 A.2d at 735-36, the existence of a single definition for malice in the defamation context leaves the standard of proof as "the only avenue open to protect private persons in accordance with *Gertz*[.]" Thus, the application of a higher standard of proof would frustrate the public policy considerations announced in <u>Jacron</u>, 276 Md. at 590, 350 A.2d at 694, which refocused the "emphasis [in private defamation actions] from the value of uninhibited debate to the [S]tate interest in protecting private persons 'for the harm inflicted on them by defamatory falsehood.'" (Quoting <u>Gertz</u>, 418 U.S. at 341).

Turning to authority from other jurisdictions, the number of jurisdictions requiring

proof by a preponderance of the evidence to overcome a common law conditional privilege is nearly equal to the number of jurisdictions requiring proof by clear and convincing evidence, with ten jurisdictions requiring proof by a preponderance of the evidence and eight jurisdictions requiring proof by clear and convincing evidence. Considering the principles articulated in Gertz and Jacron, we find more persuasive the authority from the jurisdictions that require proof by a preponderance of the evidence. Indeed, the reasoning provided by a number of courts applying the preponderance of the evidence standard comports with our holding in Jacron. Specifically, we observe that the distinction drawn between First Amendment privilege and common law conditional privilege in Lester, 596 A.2d at 69-70, and in Mancuso, 895 N.Y.S.2d at 758, is in accord with our conclusion in Jacron, 276 Md. at 589, 350 A.2d at 693, that Gertz signaled a sea change in defamation law and placed a greater emphasis on the protection of private individuals who had been defamed. Consequently, we conclude that the jurisdictions that apply the clear and convincing evidence standard to overcome a common law conditional privilege have adopted an approach that is not commensurate with Maryland law. See, e.g., Moe, 989 P.2d at 1157 ("The higher [burden] of proof necessary to overcome a qualified privilege stems from the public policy bases supporting privileges."); Erickson, 569 A.2d at 806 ("[T]he imposition of a lesser [standard] of proof would fail to adequately protect the interests underlying the privilege.").

Adoption of the clear and convincing evidence standard of proof to avoid jury confusion is equally unpersuasive. Relying on Great Coastal Express, 334 S.E.2d at 854, Seley-Radtke asserts that adopting different standards of proof for malice will cause

confusion among jurors. Seley-Radtke also relies on the language in <u>Jacron</u>, 276 Md. at 593, 350 A.2d at 696, referencing "the compelling need for consistency and simplicity in the law of defamation." According to Seley-Radtke, adopting the preponderance of the evidence standard for defeating a common law conditional privilege would undermine the principles of consistency and simplicity. We observe that Virginia has adopted a single standard of proof at least partially based on considerations of clarity in jury instruction. <u>See</u> <u>Great Coastal Express</u>, 334 S.E.2d at 854 ("It is important, we think, that juries not be confused in these cases by two different burdens of proof of malice, one pertaining to the defeat of a qualified privilege, the other pertaining to punitive damages."). We, however, note that, in <u>Jacron</u>, 276 Md. at 596-601, 350 A.2d at 697-700, this Court went to great lengths to delineate the standards of proof for claims implicating the First Amendment and those brought by private individuals. Indeed, First Amendment claims are public claims that serve to prevent granting "public servants an unjustified preference over the public they serve[,]" whereas purely private defamation actions pertain only to the private individuals affected by the case. <u>New York Times</u>, 376 U.S. at 282. As such, we declined to enmesh the standards for the sake of simplicity, thus evincing the importance of the private/public distinction in defamation claims in Maryland. We conclude that these considerations are as weighty today as they were when <u>Jacron</u> was decided, and we determine that the burden for a private individual seeking to overcome a common law conditional privilege in a purely private defamation action should not be raised beyond requiring the plaintiff to demonstrate malice, already a heightened definition, and that the applicable standard is proof by a preponderance of the evidence.

We observe that Seley-Radtke's concern regarding juror confusion is largely alleviated by the Maryland Civil Pattern Jury Instructions on overcoming a common law conditional privilege. Whereas the jury instructions for punitive damages refer to "malice" and state the standard of proof is clear and convincing evidence, the instructions regarding common law conditional privilege do not use the word "malice," but rather provide its definition: "[i]n order to recover, the plaintiff must prove by a preponderance of the evidence that the defendant made the statement with actual knowledge that the statement was false, coupled with the intent to deceive another person by means of the statement." MPJI-Cv 12:12 (4th ed., 2013 Supp.). As the Court of Special Appeals explained, "there should be no confusion in those cases where the jury is instructed as to the punitive damages malice standard, clear and convincing evidence, and overcoming the conditional privilege, preponderance of the evidence." Hosmane, 227 Md. App. at 28, 132 A.3d at 358-59. In sum, the Court of Special Appeals properly determined that the standard of proof necessary to overcome a common law conditional privilege in a purely private defamation case is proof by a preponderance of evidence; therefore, we shall affirm the judgment of the Court of Special Appeals.

## II.

Having determined that the Court of Special Appeals properly concluded that the standard of proof necessary to rebut a common law conditional privilege in a purely private defamation case is the preponderance of the evidence standard, we turn briefly to three additional questions that were before the Court of Special Appeals. In the Court of Special Appeals, Hosmane presented three questions pertaining to the order of witnesses and the

admission of evidence at trial:

[1]. Did the [circuit] court abuse its discretion in allowing [Seley-Radtke's] witness, Dr. Brahmi Shukla, to appear as the first witness in the trial?[11]

[2]. Did the [circuit] court abuse its discretion in allowing testimony regarding a settlement agreement between [Hosmane] and Dr. Brahmi Shukla?

[3]. Did the [circuit] court err by abusing its discretion in denying [Hosmane's] requests to redact portions of two February 23, 2010 emails written by appellee Dr. Seley-Radtke that contained language that was very damaging to [Hosmane]?

---

[11]The Court of Special Appeals declined to address the first question, explaining that "circumstances similar to those that gave rise to that question are unlikely to reoccur upon retrial." Hosmane, 227 Md. App. at 16 n.1, 132 A.3d at 351 n.1. The record reveals that the decision to permit Seley-Radtke's witness, Shukla, to testify first stemmed from a scheduling issue. The circuit court provided the following explanation to the jury to assuage any concern that the jury might attach significance to Shukla being called as the first witness:

Now folks, you'll come to find out as we progress in this trial that trials are dynamic things. There's little changes here and there. Ordinarily the Plaintiff, that is the party who brings an action, calls witnesses first, and when they're, they've presented their case the other side can call witnesses. But because trials are dynamic sometimes there's some flexibility necessary, and for scheduling purposes we're going to allow the defense to call Ms. Shukla out of turn. Ordinarily [Hosmane's counsel] would call all of his witnesses first, but we're going to allow the defense to call Ms. Shukla first. She will be directed, that is to say that they will get, they, the defense, will ask her questions first and then [Hosmane's counsel] will be permitted to ask cross examination questions. Ordinarily, and you should give no significance to this, it's just a scheduling change, ordinarily the Plaintiff would call all of their witnesses first and would ask them direct examination questions and the defense would cross examine, and then any witnesses the defense wanted to call, they would ask their questions first and then the other side, the Plaintiff, would be able to cross examine. I'm sure you all appreciate that and understand that. It's really a scheduling issue. So if you'll call Ms. Shukla we'll get her going.

- 42 -

In its opinion, "[f]or guidance purposes," the Court of Special Appeals addressed two of the evidentiary issues that Hosmane raised, and concluded that the challenged evidence was not relevant and "highly prejudicial[.]" Id. at 29, 32, 132 A.3d at 359, 361.[12] Although the Court of Special Appeals essentially recommended against admission of evidence that Seley-Radtke had introduced at the original trial, Seley-Radtke did not raise these issues in her petition for a writ of *certiorari*, save for a footnote that stated:

> After [issuing its holding], the Court of Special Appeals opined on two evidentiary issues. Specifically, the court found that the trial court's admission of certain evidence and its refusal to redact certain documents w[ere] erroneous because [they] resulted in the admission of irrelevant and prejudicial evidence. [Seley-Radtke] asks this Court to consider these issues to the extent necessary to decide this matter.

In other words, although the Court of Special Appeals's determination was against Seley-Radtke's position, Seley-Radtke asked this Court to review the evidentiary matters only "to the extent necessary to decide this matter." In making this request, Seley-Radtke may have deemed the evidentiary matters not to be worthy of this Court's review on *certiorari*, or she may have considered the Court of Special Appeals's determination not to be a holding of that Court that could give rise to a petition for a writ of *certiorari*. In her opening brief in this Court, Seley-Radtke does not address the evidentiary matters. It is undisputed

---

[12]In his brief in this Court, Hosmane raises an additional jury instruction issue not addressed by the Court of Special Appeals. Specifically, Hosmane contends that the circuit court erred by declining to provide a jury instruction on the republication or repetition of defamatory material. Additionally, Hosmane argues that the circuit court's instruction regarding opinions as defamation was improper. On brief, Hosmane offers little information to this Court on these contentions, merely directing this Court to his filings in the Court of Special Appeals.

that Seley-Radtke did not raise the evidentiary matters as an issue for *certiorari* review, except in the footnote above, or address the evidentiary matters in her opening brief.

Hosmane did not file a conditional cross-petition for a writ of *certiorari* in this Court raising any issue as to the Court of Special Appeals's determination on the evidentiary matters, which was in Hosmane's favor. Hosmane also did not file a cross-petition for a writ of *certiorari* raising any issue as to the evidentiary matters that were not addressed by the Court of Special Appeals—namely, allowing Seley-Radtke's witness, Shukla, to testify first and the circuit court's ruling on additional jury instructions. In his brief in this Court, Hosmane points out that Seley-Radtke did not challenge the determination reached by the Court of Special Appeals as to the evidentiary matters (*i.e.*, the redaction of e-mails and exclusion of testimony regarding the settlement agreement) and contends that, even if this Court reversed the Court of Special Appeals's judgment with respect to the common law conditional privilege jury instruction, he would nonetheless be entitled to reversal and a new trial based on the determination of the Court of Special Appeals. And, in his brief in this Court, Hosmane attempts to raise issues as to the evidentiary matters that were not addressed by the Court of Special Appeals—specifically, Shukla testifying first and additional jury instruction issues.

In a reply brief, lumping the four evidentiary issues together, Seley-Radtke contends that Hosmane failed to preserve for this Court's review any issue as to the evidentiary issues by failing to file a conditional cross-petition for a writ of *certiorari*.

Having set out the parties' positions, we determine that the evidentiary issues that the Court of Special Appeals did not address—namely, Shukla testifying first and the

additional jury instruction issues—are clearly not preserved for this Court's review. See Md. R. 8-131(b)(1) ("Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals."). Given that the issues are not preserved for this Court's review, remanding to the Court of Special Appeals for a determination on the evidentiary issues on which the Court of Special Appeals did not offer guidance is not warranted.

As to the remaining evidentiary issues, it is clear that the Court of Special Appeals deemed its holding with respect to the common law conditional privilege jury instruction to be dispositive of the case and, therefore, offered guidance only on the two evidentiary issues involving redaction of e-mails and testimony about the sexual assault settlement agreement.[13] On the other hand, had the Court of Special Appeals affirmed on the issue of the standard of proof required to overcome common law conditional privilege, it would have been necessary for the Court of Special Appeals to address the evidentiary issues and issue holdings as to them. In the strictest sense, the two issues on which the Court of

---

[13]The Court of Special Appeals reversed the circuit court on the premier issue of the standard of proof required to rebut a common law conditional privilege, which necessarily mandated a new trial. It was within the Court of Special Appeals's sound discretion to address, not address, provide guidance, or issue a holding on evidentiary issues where the Court had already determined that reversal and remand for a new trial would occur. The Court of Special Appeals was not required to issue a holding as to these additional evidentiary issues where it was remanding for a new trial on another issue, although it may be a good practice generally to do so.

Special Appeals offered guidance are not properly before this Court because: Seley-Radtke raised the issues only in a footnote in her petition for a writ of *certiorari* asking that this Court review the matters only to the extent necessary to resolve the case; Hosmane did not file a cross-petition; and the Court of Special Appeals did not issue a formal holding on the matters, but rather gave guidance. We could end discussion of the evidentiary matters here. But, nonetheless, to the extent that the Court of Special Appeals issued guidance on these evidentiary matters, and recognizing that the issues are likely to recur at the new trial, we note that we agree with the guidance offered by the Court of Special Appeals.

We concur with the Court of Special Appeals that Seley-Radtke's un-redacted e-mail referencing the "potential new charges" for Hosmane and "harassing emails" allegedly sent by Hosmane and Shukla's testimony regarding the settlement agreement were not relevant to the defamation claim. See Hosmane, 227 Md. App. at 32, 132 A.3d at 361. At trial, Hosmane stipulated that Seley-Radtke's e-mail references to the settlement agreement were not part of the defamation claims. Yet, the circuit court allowed Shukla to testify, over Hosmane's objections, to the settlement agreement's existence, its effect on the criminal charges filed against Hosmane, and the amount of the settlement.

Put plainly, we fail to discern that Shukla's testimony regarding the settlement agreement bore any relevance to the instant case. Indeed, evidence is relevant only if it has "any tendency to make the existence of any fact **that is of consequence to the determination of the action** more probable or less probable than it would be without the evidence." Md. R. 5-401 (emphasis added). From our perspective, Shukla's testimony regarding the settlement agreement did not render any fact that was of consequence to the

- 46 -

defamation action more probable or less probable. In the Court of Special of Appeals, Seley-Radtke argued that Shukla's testimony was offered to corroborate the portions of Seley-Radtke's e-mails referencing the settlement agreement, thereby making the truth of Seley-Radtke's other allegedly defamatory statements more likely. See Hosmane, 227 Md. App. at 32, 132 A.3d at 360-61. We, however, are unpersuaded that Shukla's testimony as to the settlement agreement has any bearing on the veracity of assertions contained in Seley-Radtke's e-mails.[14]

Similarly, the two sentences of Seley-Radtke's e-mail referencing the "potential new charges" for Hosmane and "harassing emails" allegedly sent by Hosmane were also not relevant to the defamation case. In the circuit court, Seley-Radtke's counsel argued that no redaction of the two sentences was appropriate because the two sentences were necessary to provide "context" for the other allegedly defamatory statements in the e-mails. Again, the determination as to relevance of evidence is based on whether its admission would render a determinative fact more probable or less probable. Plainly, the reference in Seley-Radtke's e-mails to Hosmane's alleged harassing e-mails and alleged new charges does not tend to make Seley-Radtke's other statements more probable or less probable.[15]

_____

[14]Seley-Radtke's e-mails make only general reference to the settlement agreement:

"The charges weren't really dismissed, he settled out of court and also with the university. . . ."

"Look, we all know two deals were struck and I understand why that was done. I get it! But the charges were dropped because of those deals, but not because [Hosmane] was innocent. . . ."

[15]Indeed, the Watson e-mail, to which Seley-Radtke makes general reference, was never formally attributed to Hosmane.

- 47 -

In offering guidance, the Court of Special Appeals assessed the admissibility of the

challenged evidence as follows:

> The two sentences in the two February 23, 2010 emails referring to new charges against [Hosmane] and "harassing emails" he purportedly sent, and testimony by Dr. Shukla about any settlement agreement for an alleged assault, were not relevant to any issue in this defamation case. These two pieces of evidence were highly prejudicial and cast [Hosmane] in a very bad light, *i.e.,* that he was a sex abuser who paid money to resolve such a claim, that he was the subject of unrelated charges and was sending harassing emails. The purported purpose for which these two pieces of evidence were offered was that if the jury believed that parts of the email were true then the jury could or should find that the remainder of the emails was true. The logic does not follow. Unrelated charges and alleged harassing emails, or that [Hosmane] may have in fact settled an unrelated civil matter, do not make the other allegations in the emails more likely or less likely true, and have no relevancy to this defamation action.

Hosmane, 227 Md. App. at 32-33, 132 A.3d at 361 (footnotes omitted). We agree with the

Court of Special Appeals's evaluation. Given the lack of relevance and prejudicial nature

of this evidence—*i.e.*, the harassing e-mails, unrelated charges, and Shukla's testimony

regarding the settlement agreement—the evidence was not admissible at trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

Circuit Court for Baltimore County
Case No. 03-C-12-007007

Argued: October 11, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 19

September Term, 2016

_____

KATHERINE SELEY-RADTKE

v.

RAMACHANDRA S. HOSMANE

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Dissenting Opinion by McDonald, J.,
which Getty, J., joins.

_____

Filed: November 22, 2016

The Majority opinion explains in some detail the history of defamation law in Maryland, as limited and guided by the Supreme Court's First Amendment case law. As the Majority opinion accurately notes, this Court has not yet determined the standard of proof of malice necessary to overcome a common law conditional privilege in a defamation case. There is nearly an even split among other American jurisdictions between a standard of preponderance of the evidence and a standard of clear and convincing proof. So we have a choice to make.

The Majority opinion opts for a preponderance standard based on its assessment of the State interest in providing a remedy for individuals who have been victims of defamation. Majority slip op. at 36. I would make a different choice, in light of the other interests at stake when a conditional privilege applies.

The Majority opinion begins from the premise that this is a "purely private defamation action." Majority slip op. at 1. However, whenever a conditional privilege exists – and it is undisputed that a conditional privilege applies in this case unless malice is proven – there are inevitably public or social interests at stake. *See Gohari v. Darvish*, 363 Md. 42, 55-58 (2001). For example, those who report serious violations of the law or other wrongdoing to public authorities may rely on the public interest privilege – a common law conditional privilege. In this case, the common interest privilege is invoked in the context of what the defendant asserted was continuing wrongful conduct by one who had been found to have violated the university's rules against sexual harassment as a result of a complaint of sexual assault. The conditional privileges thus offer to those who come forward to report wrongdoing some protection against attempts to discourage such

reporting with the threat of a defamation lawsuit.

The interest relied upon by the Majority opinion, though an important one, is that of the plaintiff alone. The interests underlying the conditional privileges are not just those of the defendant, but of other individuals and sometimes society at large. In light of the public and societal interests at stake, I agree with those courts that have opted for a standard of clear and convincing evidence. Adoption of the clear and convincing standard would not mean that a conditional privilege could not be overcome – just that it would take more than a slight tip of the scales to do so.

Judge Getty has indicated that he joins this opinion.